**David Wayne GLOCKZIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–06–00026–CR.**

Court of Appeals of Texas,
Waco.

Feb. 21, 2007.

Discretionary Review Refused
June 6, 2007.

---

**2.** This is Powell's first issue.

John A. Kuchera, Waco, for appellant.

John W. Segrest, McLennan County Dist. Atty., Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

David Wayne Glockzin was convicted of aggravated sexual assault (count I) and

indecency with a child (count II). The jury sentenced Glockzin to sixty years in prison with a $5,000 fine on count I and twenty years in prison with a $5,000 fine on count II. Glockzin argues that: (1) the evidence is factually insufficient; (2) the court's charge "constructively amended" the indictment; (3) "sexual contact" was improperly defined in the charge; (4) the court erred by not *sua sponte* including an extraneous offense instruction in the guilt-innocence charge; (5) the court's charge commented on the weight of the evidence as to count I; (6) the court's charge commented on the weight of the evidence as to count II; (7) the court erred by not *sua sponte* including an extraneous offense instruction in the punishment charge; and (8) trial counsel rendered ineffective assistance. We affirm.

## FACTUAL BACKGROUND

Glockzin is J.M.'s father.[1] J.M. and her niece, H.M., stayed with Glockzin on the night of the offense. That night, Glockzin followed J.M. to the apartment's only bedroom, got in bed with her, pulled down her shorts and underwear, and rubbed and penetrated her vaginal area with his finger.[2] Glockzin also pulled down his pants, pulled up her shirt, "scooted up," forced her chest against his penis, and rubbed.[3] Glockzin then left the bedroom. J.M. testified that H.M. was in the living room during this time. She told Detective Lonnie Underberg that H.M. was in the bedroom, but ran out when Glockzin entered and returned after he left. J.M. testified that Glockzin was drinking; she smelled alcohol and his eyes were red. She concealed these events until, several days la-

ter, her sister, R.M., discovered J.M.'s bloody underwear hidden in the closet. She and M.G., J.M.'s mother, confronted J.M. who revealed the offense.

## FACTUAL SUFFICIENCY

In his first issue, Glockzin challenges the factual sufficiency of the evidence to support his aggravated sexual assault conviction.

Under factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim.App.2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7 (quoting *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996)). The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex. L.Rev. 515, 519 (1991)).

An appellate court, although to a very limited degree, may act as the so-called "thirteenth juror" to review the fact

---

1. Although there exists some doubt as to whether Glockzin is J.M.'s biological father, he assumed this role. He and J.M.'s mother, M.G., are divorced. J.M. resides with her mother.

2. J.M. later acknowledged that the bed covers prevented her from seeing Glockzin's finger.

3. At trial, J.M. used anatomically correct dolls to demonstrate Glockzin's actions.

finder's weighing of the evidence and disagree with the fact finder's determination. *Watson*, 204 S.W.3d at 417 (citing *Tibbs v. Florida*, 457 U.S. 31, 42–3, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982), *Meraz v. State*, 785 S.W.2d 146, 156 (Tex.Crim.App. 1990)). If an appellate court concludes that the evidence is factually insufficient, it must clearly state why it has reached that conclusion. *Johnson*, 23 S.W.3d at 7 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986)).

Per the law in effect at the time of the offense, a person commits aggravated sexual assault where he: (1) intentionally or knowingly; (2) causes penetration of the female sexual organ; (3) by any means; (4) of a child younger than fourteen years of age; and (5) the child is not the person's spouse. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 896, § 1, 2003 Tex. Gen. Laws 896, 2722, (amended 2005) (current version at TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2006)); *see also* TEX. PEN. CODE ANN. § 22.011 (Vernon Supp.2006).

### Analysis

■ First, Glockzin complains that evidence of J.M.'s genital warts suggests that he is an "invisible carrier" and infected J.M. through "genital-to-genital contact." Several days after the offense, Dr. Ann Sims of the Child Advocacy Center diagnosed J.M. with genital warts. The warts bled and hurt if touched. Sims could not determine how long J.M. had the warts, "but in all probability, it had been more than two weeks since she had come into contact with whatever caused the wart." She believes that "an eruption of warts" like J.M.'s would most likely result from "genital-to-genital contact" by which warts are commonly transmitted, as opposed to digital penetration. Sims also stated that "it is not impossible that a finger—either a finger that had come in contact with a wart just before it touched her or a finger that had a wart on it or something like that" may have infected J.M.

The record contains no evidence of genital warts among the individuals with whom J.M. has had contact. Glockzin denied having warts or being treated for warts. M.G. did not have warts. R.M., M.G., and J.M.'s Aunt, A.M., did not know anyone with warts. Underberg obtained medical releases from Glockzin, M.G., and M.G.'s boyfriend, but found no evidence of treatment for warts. Glockzin agreed to a visual inspection by Underberg, which revealed no warts. Even so, Sims testified that a person may be either visibly or microscopically infected and a physical exam is the usual method of diagnosis.

In response, Glockzin argues that: (1) though he has no visible warts, testing is available for detecting the human papilloma virus that causes the warts; (2) had he been tested, the issue would be resolved as to whether he infected J.M.; and (3) testimony regarding J.M.'s infection would have been improper if he tested negative for HPV. He urges us to take judicial notice of a scientific article addressing this method of testing, but which was not presented at trial.

Although the Texas Court of Criminal Appeals has held that appellate courts may take judicial notice of scientific literature not presented at trial, the Court recently refused to do so:

> In his brief to this Court, the State Prosecuting Attorney presents a plethora of cites to scientific articles and learned treatises, as well as to some cases from other jurisdictions concerning this general area of scientific endeavor. This is swell stuff. The trial court should have been given this material, and appellant should have been allowed an opportunity to cross-examine any witnesses who sponsored it. The

trial court hearing is the main event for *Daubert/Kelly* gatekeeping hearings; it is not a try-out on the road to an appellate scientific seminar.

. . .

It cannot now rely upon the appellate courts to become independent scientific sleuths to ferret out the appropriate scientific materials which could support the trial court's decision . . .

*Hernandez v. State*, 116 S.W.3d 26, 30–31 (Tex.Crim.App.2003); *see Emerson v. State*, 880 S.W.2d 759, 764–65 (Tex.Crim. App.1994). Because the scientific literature cited in Glockzin's brief was not presented at trial and because we find no authority "recognizing the methodology prescribed" in this literature, we decline to take judicial notice of this article. *Davis v. State*, 147 S.W.3d 554, 555–56 (Tex.App.-Waco 2004, no pet.); *see Hernandez*, 116 S.W.3d at 30.

■ Sims testified that while there is testing for DNA of HPV, it is unavailable in McLennan County, it is not "very accurate; it's not very sensitive; and it's not cost effective." Sims also testified that not every person will contract genital warts by coming into contact with HPV. The record neither shows who else may have abused J.M. nor conclusively establishes when she contracted the warts. The fact that J.M. suffers from a sexually transmitted disease that Glockzin purportedly lacks "does not make the evidence supporting the judgment so weak as to be manifestly unjust and clearly wrong." *Thompson v. State*, 85 S.W.3d 415, 420 (Tex.App.–Fort Worth 2002, no pet.) *aff'd* 108 S.W.3d 287 (Tex. Crim.App.2003); *see Watson*, 204 S.W.3d at 415; *see also Johnson*, 23 S.W.3d at 11.[4]

■ Second, Glockzin argues that evidence of prior abuse is contrary to proof of his guilt. After disclosing the abuse, J.M. consistently repeated that Glockzin assaulted her and this was the only time. She has repeatedly denied any previous abuse and consistently describes the offense. However, Sims believes that J.M. may have been abused more often than she admits. Sims testified that J.M. did not likely contract warts from only one instance of abuse but may have been infected during an instance she does not recall. J.M. admitted that she had been experiencing pain and itching in her vaginal area since Christmas, approximately three months before the offense. She becomes upset if questioned further about additional abuse. Two years after she first examined J.M., Sims performed a second exam, which revealed that J.M's warts had mostly disappeared. This exam also revealed a tear in J.M.'s hymen. This tear most likely resulted from something other than digital penetration, which does not normally cause a tear.

Sims believes that J.M. is hiding something, maybe to protect herself and/or her family. R.M. feels this is not the only instance of abuse. M.G. and R.M. observed J.M.'s behavior change after disclosing the abuse. J.M. wanted to be alone and was not as playful with other children. J.M. no longer wanted to see Glockzin, but attended the circus with him the week after the offense. Another time, she turned away when she saw Glockzin on the street and reached for M.G.'s hand. A.M. testified that J.M. appeared nervous. About three years earlier, when A.M. spoke to J.M. and another girl about abuse, J.M. became teary. Because A.M.

---

**4.** "Similarly, the mere fact that I.F. suffered from chlamydia and genital warts, which Appellant did not have, does not make the evidence supporting the judgment so weak as to be manifestly unjust and clearly wrong." *Thompson v. State*, 85 S.W.3d 415, 420 (Tex. App.–Fort Worth 2002, no pet.).

was crying, she thought J.M.'s tears may have been shed in sympathy. Even so, A.M. feels that J.M. is hiding something. The witnesses could not identify anyone else who may have abused J.M.

■ While it is possible that J.M. was abused in the past, whether by Glockzin or someone else, the fact remains that J.M. described an instance of abuse by Glockzin. "The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault or indecency with a child." *Perez v. State*, 113 S.W.3d 819, 838 (Tex.App.Austin 2003, pet. ref'd). The jury was free to accept J.M.'s testimony over that of other witnesses, including Glockzin, and disregard any "inconsistencies." *Id.* at 838–39. Therefore, we cannot say that the possibility of prior abuse renders the evidence factually insufficient. *See Watson*, 204 S.W.3d at 415; *see also Johnson*, 23 S.W.3d at 11.

Third, Glockzin argues that M.G. may have coached J.M. He asks us to take judicial notice of a scientific article discussing the character traits of falsely accusing parents. We decline to do so. *See Davis*, 147 S.W.3d at 555–56; *see also Hernandez*, 116 S.W.3d at 30.

The record indicates that J.M. concealed the abuse to avoid upsetting M.G., M.G. felt "angry" when R.M. and she questioned J.M. about the underwear. A.M. felt that J.M. may be trying to appease her mother or avoid getting into trouble. Sims felt J.M. might be trying to "protect someone." Glockzin believes M.G. is the force behind J.M.'s accusations:

> No. I don't know why she said it. I mean, I don't know if she came up with it on her own or somebody told her. I know it didn't happen.
>
> What I believe is her mom knows who and she doesn't—I think she's protecting somebody.

Yeah. I think it's either mom making her, or I am the only name she can come up with so her mom wouldn't go ballistic on her.

■ However, the record does not indicate any motive for fabricating allegations. Both J.M. and M.G. had much to lose by accusing Glockzin. Glockzin voluntarily provided financial assistance to M.G. and provided additional funding when asked. Although Glockzin denies doing so, M.G. testified that he gave her $400, significantly more than normal, around the time of the offense. Glockzin was generous with J.M. He gave her various opportunities, such as attending the circus and eating out, that she might not otherwise be able to enjoy. J.M. also enjoyed spending time with Glockzin's parents and was sad not to be able to see them anymore. R.M. and A.M. testified that Glockzin and J.M. got along and the relationship seemed normal. Glockzin said he had a good relationship with J.M. M.G. testified that Glockzin and she got along. There appears to be no animosity within the various relationships involved. Finally, J.M. identified Glockzin only after R.M. named other men with whom J.M. had contact.

■ The jury is the "sole judge of the weight and credibility of witness testimony" and "may choose to believe all, some, or none of it." *Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997); *Perez*, 113 S.W.3d at 838. The jury is also in the "best position" to observe the demeanor, attitude, "expressions, gestures, and tone" of the witnesses. *Lacy v. State*, 899 S.W.2d 284, 287 (Tex.App.-Tyler 1995, no writ); *Reed v. State*, 991 S.W.2d 354, 360 (Tex.App.-Corpus Christi 1999, pet. ref'd). Having heard J.M., M.G., and Glockzin's testimony and observed their demeanors, the jury was free to decide who and what to believe. *See Santellan*, 939 S.W.2d at 164; *see also Perez*, 113

S.W.3d at 838; *Lacy*, 899 S.W.2d at 287; *Reed*, 991 S.W.2d at 360. The jury was in the best position to evaluate whether the allegations against Glockzin were truthful or fabricated. *See Lacy*, 899 S.W.2d at 287.

Fourth, Glockzin denied abusing J.M. or drinking on the night of the offense. According to Glockzin, on that night, J.M. and H.M. played outside, watched television, and then went to sleep in his bedroom's king size bed. He took them home the next morning. He has never been accused of similar offenses. Moreover, R.M. testified that Glockzin treated her kindly during his marriage to M.G. A.M. did not believe the allegations because she "knew David as a good person." No semen or DNA evidence links Glockzin to the offense.

 Glockzin's denials of abuse and the absence of physical evidence do not render the evidence factually insufficient. "The lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence." *Lee v. State*, 176 S.W.3d 452, 458 (Tex.App.-Houston [1st Dist.] 2004), *aff'd* 206 S.W.3d 620 (Tex. Crim.App.2006). Additionally, J.M. testified to facts establishing that Glockzin committed aggravated sexual assault. *See* TEX. PEN.CODE ANN. §§ 22.021, 22.011. Regardless of other testimony and evidence, J.M.'s testimony alone was all the jury needed to convict Glockzin. *See Perez*, 113 S.W.3d at 838. The jury was entitled to accept J.M.'s testimony and not Glockzin's. *See id.; see also Santellan*, 939 S.W.2d at 164; *Lacy*, 899 S.W.2d at 287; *Reed*, 991 S.W.2d at 360. Semen and DNA were not needed to corroborate J.M.'s testimony. *See* TEX.CODE CRIM. PROC. ANN. art. 38.07(a), (b) (Vernon 2005).

In summary, "a neutral review of all the evidence" does not demonstrate that the "proof of guilt is so weak" or the "conflicting evidence is so strong" that the verdict is "clearly wrong and manifestly unjust." *Watson*, 204 S.W.3d at 415; *Johnson*, 23 S.W.3d at 11. Because the evidence is factually sufficient to support Glockzin's conviction for aggravated sexual assault, we overrule his first issue.

## CONSTRUCTIVE AMENDMENT

 In his second and third issues, Glockzin complains that the court's definition of "sexual contact" in the charge differed from that in the indictment, constructively amending the indictment and authorizing conviction on a different theory than alleged in the indictment.

 "Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App.2005). If error exists, we then "analyze that error for harm." *Id.* When, as here, an appellant fails to object to the charge at trial, he must show egregious harm to prevail on appeal. *See id.* at 743–44; *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985). "The record must show that a defendant has suffered actual, rather than merely theoretical, harm." *Ngo*, 175 S.W.3d at 750. "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Id.* (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996)). "[T]o determine whether the error was so egregious that a defendant was denied a fair and impartial trial, a reviewing court should examine: 1) the entire jury charge; 2) the state of the evidence; 3) the arguments of counsel; and 4) any other relevant information in the record." *Ngo*, 175 S.W.3d at 750 n. 48; *Almanza*, 686 S.W.2d at 171.

The Penal Code, in relevant part, states that a person commits indecency with a

child by: (1) engaging in sexual contact with the child; or (2) causing the child to engage in sexual contact. Tex. Pen.Code Ann. § 21.11(a) (Vernon 2003). "Sexual contact" constitutes:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or

(2) any touching of *any part of the body of a child,* including touching through clothing, *with* the anus, breast, or *any part of the genitals of a person.*

Tex. Pen.Code Ann. § 21.11(c) (emphasis added).

In this case, the indictment charged Glockzin with committing indecency with a child by *causing* the child to engage in sexual contact:

And it is further presented in and to said Court that the said **DAVID WAYNE GLOCKZIN** in the County of McLennan and State aforesaid on or about the 29th day of March, 2003, did then and there, with the intent to arouse or gratify the sexual desire of the Defendant, intentionally or knowingly *cause* [J.M.], a child younger than 17 years of age and not the spouse of the Defendant, *to engage in sexual contact by causing* the said [J.M.] to touch the genitals of the Defendant.

(Emphasis added). The court defined "sexual contact" according to section 21.11(c)(2):

... any touching *of any part of the body of a child* including touching through clothing, *with* the anus, breast, or any part of the genitals of a *person* with the intent to arouse or gratify the sexual desire of any person.

(Emphasis added). Glockzin contends that the court should have defined "sexual contact" according to section 21.11(c)(1) and by not doing so, the court authorized the jury to convict him for *engaging* in sexual contact with J.M., rather than *causing* J.M. to engage in sexual contact.

First, Glockzin relies on *Lujan v. State* for the proposition that "touching" constitutes "digital manipulation or manual handling or fondling." 626 S.W.2d 854, 860 (Tex.App.-San Antonio 1981, pet. ref'd). However, *Lujan* did not "construe the statute to limit the proscribed conduct to a touching of the child's genitals by the hands of the accused." *Id.* at 859. "The definition of touching is not limited to manual or digital sensory perception." *Ickes v. State,* No. 01–96–01540–CR, 1998 WL 734014, at \*5, 6, 1998 Tex.App. Lexis 6590, at \*14 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd) (not designated for publication).

Neither is Glockzin's reliance on *Planter v. State* persuasive. In *Planter,* both the indictment and the charge alleged that Planter "requested, commanded and attempted to induce Lex Baquer to engage in specific conduct, namely, to kill Bob Fratta." 9 S.W.3d 156, 159 (Tex.Crim. App.1999). However, the evidence showed that "appellant attempted to request, command or attempt to induce Bacquer to pay appellant to kill Fratta." *Id.* The Court held:

Appellant was never charged with or indicted for the offense that the evidence appears to support: capital murder by soliciting Bacquer to hire appellant to kill Fratta. The evidence presented at trial does not comport with the conduct alleged in the indictment and set out in the jury charge, and the jury verdict cannot, therefore, be supported logically by either the actual jury charge or the hypothetically-correct jury charge that was formulated by the Court of Appeals.

*Id.* Planter was "convicted for the solicitation of capital murder, but the evidence indicated that he was actually guilty of capital murder by solicitation, a different

offense." *Benn v. State*, 110 S.W.3d 645, 649 (Tex.App.-Corpus Christi 2003, no pet.); *see Planter*, 9 S.W.3d at 159.

Unlike Planter, Glockzin was convicted of an offense supported by the evidence. As the State explained:

> He pulls out his penis, and he rubs it on her chest. That is engaging in sexual contact. The touching of his genitals doesn't have to be with her hand. *It's him causing her to touch his genitals,* and it was touching her chest. That is indecency with a child.
>
> Don't be confused about that word "touching."

Contrary to Glockzin's argument, this statement did not confuse the issue. Rather, it illustrates that Glockzin committed indecency with a child as alleged in the indictment by causing J.M. to engage in sexual contact by causing her chest to touch his penis.

 Furthermore, "the application paragraph of a jury charge is that which authorizes conviction, and an abstract charge on a theory of law which is not applied to the facts is insufficient to bring that theory before the jury." *Campbell v. State*, 910 S.W.2d 475, 477 (Tex.Crim.App. 1995). "[A]bstract statements of the law that go beyond the allegations in the indictment will not present reversible error when the court's application of the law to the facts effectively restricts the jury's deliberation to the allegations in the indictment." *Grady v. State*, 614 S.W.2d 830, 831 (Tex.Crim.App.1981) (citing *Toler v. State*, 546 S.W.2d 290, 293–94 (Tex.Crim. App.1977)); *see Sandig v. State*, 580 S.W.2d 584, 586 (Tex.Crim.App.1979); *see also Thompson v. State*, 12 S.W.3d 915, 921 (Tex.App.Beaumont 2000, pet. ref'd).

The court's application paragraph on Count II tracked the language of the indictment:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 29th day of March, 2003, in McLennan County, Texas, the defendant, David Wayne Glockzin, did then and there, with the intent to arouse or gratify the sexual desire of the Defendant, intentionally or knowingly *cause* [J.M.], a child younger than seventeen years of age and not the spouse of the defendant, *to engage in sexual contact by causing* the said [J.M.] to touch the genitals of the defendant, then you will find the defendant guilty of Indecency with a Child, as alleged in Count 2 of the indictment.

(Emphasis added). The court's application paragraph "unequivocally restricts the jury's consideration to only those allegations contained in the indictment." *Grady*, 614 S.W.2d at 831. The charge limits the jury's consideration to the theory of indecency with a child by causing the child to engage in sexual conduct as alleged in the indictment. Accordingly, the court's definition of "sexual conduct" did not constructively amend the indictment as to Count II or authorize conviction on a theory not alleged in the indictment. We overrule Glockzin's second and third issues.

## SUA SPONTE DUTY TO INCLUDE EXTRANEOUS OFFENSE INSTRUCTIONS

Glockzin's fourth and seventh issues challenge the court's failure to *sua sponte* include an instruction as to extraneous offenses in the guilt-innocence charge and the punishment charge.

### Guilt–Innocence Phase

 Glockzin contends that certain testimony at guilt-innocence introduced "uncharged extraneous conduct;" thus, the jury should have been instructed accordingly.

██ "[A] trial court has [a] *sua sponte* duty" to instruct the jury "on evidence of extraneous offenses in the guilt-innocence charge when such evidence is admitted." *Rodgers v. State*, 180 S.W.3d 716, 723–24 (Tex.App.-Waco 2005, no pet.). The trial court must so instruct "regardless of whether the defendant requests such an instruction or objects to its omission." *Id.* at 720.[5] On appeal, we consider whether the defendant "was harmed by the improper omission of the instruction, not by the admission of evidence of extraneous offenses." *Rodgers*, 180 S.W.3d at 724; *see Ellison v. State*, 86 S.W.3d 226, 228 (Tex.Crim.App.2002).

Glockzin complains of testimony that he: (1) rubbed J.M.'s vaginal area; (2) had been drinking on the night of the offense; and (3) may have invisibly infected J.M. with genital warts, probably via "genital-to-genital contact," and so may have abused J.M. in the past. The State responds that these acts constitute same transaction contextual evidence.

██ Same transaction contextual evidence is admissible where "the facts and circumstances of the instant offense would make little or no sense without" it. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim.App.1993). "[E]vents do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App.2000). A "jury is entitled to know all the relevant surrounding facts and circumstances of the charged offense." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex.Crim.App.1986). No limiting

instruction is required for same transaction contextual evidence. *See Camacho v. State*, 864 S.W.2d 524, 535 (Tex.Crim.App. 1993).

Evidence that Glockzin rubbed J.M.'s vaginal area relates to his behavior immediately prior to committing aggravated sexual assault. The jury was entitled to hear about Glockzin's "acts, words, and conduct" committed at the time of the offense. *Rogers*, 853 S.W.2d at 33; *see Wesbrook*, 29 S.W.3d at 115. For this same reason, the jury was also entitled to hear testimony regarding Glockzin's consumption of alcohol on the night of the offense.

Evidence of J.M.'s genital warts does not describe any particular act that could constitute an extraneous offense. Rather, it explains how the abuse was discovered, the cause of the blood in J.M.'s underwear, and her physical condition following the assault. J.M. testified that she was bleeding "because he stuck his finger down there." This evidence "was intended to aid the jury in understanding the whole interwoven transaction and to intelligently perform their function of deciding guilt or innocence . . ." *Norrid v. State*, 925 S.W.2d 342, 349 (Tex.App.-Fort Worth 1996, no pet.). The State was also not required to prove that Glockzin infected J.M.: "the mere fact the victim has a sexually transmitted disease that the defendant lacks does not negate the defendant's culpability for assault." *Thompson*, 85 S.W.3d at 420.

Therefore, because the evidence of which Glockzin complains constitutes same transaction contextual evidence, no limiting instruction was required. *See Camacho*, 864 S.W.2d at 535; *see also Castaldo*

---

5. Although the State urges us to do so, we decline to revisit our holding in *Rodgers*. *See McCormick v. State*, No. 10–05–00325–CR, 2007 WL 64445, at *3, 2007 Tex.App. Lexis 183, at *10 (Tex.App.-Waco Jan. 10, 2007, no pet.) (mem.op.); *see also Ex parte Townsend*, 137 S.W.3d 79, 82 (Tex.Crim.App.2004); *Awadelkariem v. State*, 974 S.W.2d 721, 724–26 (Tex.Crim.App.1998).

*v. State,* 78 S.W.3d 345, 352 (Tex.Crim. App.2002). We overrule Glockzin's fourth issue.

### Punishment Phase

■ Glockzin also contends that the court's punishment charge should have contained a reasonable doubt instruction as to extraneous offenses.

■ A reasonable doubt instruction must be included "in the punishment charge regardless of whether the defendant requests it or objects to its omission." *Rodgers,* 180 S.W.3d at 720; *see Huizar v. State,* 12 S.W.3d 479, 484 (Tex.Crim.App. 2000). Because Glockzin did not object to omission of the instruction, we will reverse only upon a finding of egregious harm. *See Bluitt v. State,* 137 S.W.3d 51, 53 (Tex.Crim.App.2004).

■ First, Glockzin challenges the omission of an instruction as to four prior misdemeanor convictions. "After a finding of guilt, evidence may be offered by either party as to any matter that the court deems relevant to sentencing, including but not limited to:"

> 1) the *prior criminal record of the defendant;* 2) the general reputation of the defendant; 3) the character of the defendant; 4) an opinion regarding the reputation of the defendant; 5) the circumstances of the offense on trial; and, 6) extraneous offenses and bad acts that are shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible.

*Id.* at 54 (emphasis added); TEX.CODE CRIM. PROC. art. 37.07 § 3(a)(1) (Vernon 2006). In *Bluitt,* the Court of Criminal Appeals reasoned that the defendant's criminal record "is not grouped with extraneous offenses, and therefore we presume that the legislature did not intend to require the same burden of proof that it attached to extraneous, unadjudicated offenses." *Bluitt,* 137 S.W.3d at 54. Therefore, the four misdemeanor convictions admitted as evidence and to which Glockzin testified are part of his prior criminal record, and no reasonable doubt instruction was required as to this evidence. *See id.; see also* TEX.CODE CRIM. PROC. art. 37.07 § 3(a)(1).

Second, Glockzin again challenges the omission of an instruction regarding evidence of his alcohol consumption, rubbing J.M.'s vaginal area, and J.M.'s genital warts. However, we have already found that no instruction was required because this evidence constitutes same transaction contextual evidence. The purpose of this evidence was to assist the jury with "intelligently perform[ing]" the role of assessing punishment. *Norrid,* 925 S.W.2d at 349. No reasonable doubt instruction was required at punishment. *See id.; see also Garza v. State,* 2 S.W.3d 331, 335 (Tex. App.San Antonio 1999, pet. ref'd); *Rachell v. State,* No. 14–05–00122–CR, 2006 WL 1081286, at *5, 6, 2006 Tex.App. Lexis 3264, at *16–17 (Tex.App.-Houston [14th Dist.] April 13, 2006, pet. ref'd) (not designated for publication).[6] We overrule Glockzin's seventh issue.

---

**6.** "The Texas Court of Criminal Appeals has not addressed whether a beyond-a-reasonable-doubt instruction is required when evidence of other offenses is admitted during the guilt/innocence phase and reoffered at the punishment phase of a trial as same transaction contextual evidence." *Moore v. State,* 165 S.W.3d 118, 124 (Tex.App.-Fort Worth 2005, no pet.). In *Moore,* the Fort Worth Court "hesitate[d] to read into [article 37.07] an exception to the burden of proof for extraneous offenses or bad acts offered as same transaction contextual evidence." *Id.* at 125. The Court did "not believe that there is a 'necessity' of showing the surrounding circumstances in order to present a complete

## COMMENT ON THE WEIGHT OF THE EVIDENCE

 In his fifth and sixth issues, Glockzin argues that the court's charge improperly commented on the weight of the evidence as to both counts of the indictment.

 "A jury charge should set forth the applicable law of the case without expressing an opinion on the weight of the evidence, summing up the testimony, or discussing the facts or using jury argument to arouse the sympathy or cite the passions of the jury." *McGowan v. State*, 938 S.W.2d 732, 738 (Tex.App.-Houston [14th Dist.] 1996), *aff'd sub. nom. Weightman v. State*, 975 S.W.2d 621 (Tex.Crim. App.1998); *see* TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2006); *see also Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim.App.2003). The court should not "give the jury an instruction that constitutes a comment on the elements of the alleged offense, or assumes a disputed fact." *McGowan*, 938 S.W.2d at 738–39; *Grady v. State*, 634 S.W.2d 316, 317 (Tex. Crim.App.1982).

The court instructed the jury that it should find Glockzin guilty of aggravated sexual assault if it found that he "did then and there intentionally or knowingly cause the penetration of the sexual organ of [J.M.], *a child who was then and there younger than fourteen years of age and not the spouse of the defendant* ..." (Emphasis added). According to Glockzin, this instruction "assumed the truth" that J.M. was under age fourteen and not Glockzin's spouse at the time of the offense. He argues the paragraph should have read, "*and that* [J.M.] was then there a child younger than 14 years of age, *and that* [J.M.] was not the spouse of the defendant ..."

The court similarly instructed the jury that it should find Glockzin guilty of indecency with a child if it found that he "did then and there, with the intent to arouse or gratify the sexual desire of the Defendant, intentionally or knowingly cause [J.M.], *a child younger than seventeen years of age and not the spouse of the defendant* ..." (Emphasis added). Glockzin argues that the paragraph should have contained different language: "*and that* [J.M.] was then under the age of seventeen years *and* not the spouse of the defendant ..."

The undisputed evidence at trial establishes that J.M. was a child under the age of fourteen, and certainly seventeen, and was not Glockzin's spouse at the time of the offense. *See McCormick v. State*, No. 10–05–00325–CR, 2007 WL 64445, at *8, 2007 Tex.App. Lexis 183, at *23 (Tex.App.– Waco Jan. 10, 2007, no pet.) (mem.op.). Thus, considering the entire charge, we cannot say that the court impermissibly commented on the elements of the offense or assumed a disputed fact. *See McGowan*, 938 S.W.2d at 739; *see also Grady*, 634 S.W.2d at 317. We overrule his fifth and sixth issues.

## INEFFECTIVE ASSISTANCE

Glockzin argues, in his eighth issue, that his trial counsel rendered ineffective assistance by failing to: (1) object to constructive amendment of the indictment and the court's definition of "sexual contact;" (2) request a limiting instruction at guilt-innocence and a reasonable doubt instruction

picture to the jury at the punishment phase." *Id.* We disagree. The evidence assists the jury with assessing punishment. *See Norrid v. State*, 925 S.W.2d 342, 349 (Tex.App.-Fort Worth 1996, no pet.). Neither do we see a

reason to disregard cases holding that a reasonable doubt instruction is not required at punishment for same transaction contextual evidence.

at punishment; and (3) object to the court's comment on the weight of the evidence.

Because we have determined that ·no error was committed in any of these instances, counsel was not ineffective for failing to make these objections. *See Ladd v. State,* 3 S.W.3d 547, 565 (Tex. Crim.App.1999). Therefore, we overrule Glockzin's eighth issue.

The judgment is affirmed.

Chief Justice GRAY concurs in the judgment which affirms Glockzin's convictions without a separate opinion.