Affirmed and Memorandum Opinion filed July 31, 2007








Affirmed and Memorandum Opinion filed July 31, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00501-CR

____________

 

JOHN HENRY MEARIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 182nd
District Court

Harris County, Texas

Trial Court Cause No. 1033059

 



 

M E M O R A N D U M   O P I N I O N

Appellant, John Henry Mearis, was charged by indictment
with the felony offense of aggravated sexual assault of a child.  Appellant
pleaded Anot guilty,@ and his case was
tried to a jury.  The jury found him guilty of the offense; after appellant
pleaded Anot true@ to an enhancement
allegation, the court sentenced appellant to life in the Texas Department of
Criminal Justice, Institutional Division.  On appeal, appellant challenges only
the factual sufficiency of the evidence to convict him.  We overrule appellant=s issue and affirm
the trial court=s judgment. 








Factual
Background

On April 6, 2005, E.S., a thirteen-year-old girl and the
oldest of five children, was left in charge of her siblings while her mother
worked.  At around 7:00 p.m., E.S. and her sisters went across the street to
play with the children who lived across the street.  The children across the
street were home, but their mother was not.  Upon entering the house, E.S. saw
three menCB.J., Leon, and appellant.  The men were barbecuing
and drinking, and the younger children began watching a movie, while E.S. did
the hair of two of the neighbor children.   

E.S. needed a brush and comb to style the hair of one of
the children.  She went upstairs to look for them, and found the items on a bed
in one of the upstairs bedrooms.  After she went in the room to collect the
items, the light in the room went out and the door closed.  In the light from
the hallway, before the door was closed, E.S. could see appellant=s face.  Appellant
moved towards E.S., telling her to be quiet.  He shoved her face-down on the
bed and removed her dress, shorts, and panties.  Appellant said that he wanted
to Amake [her] a
woman.@  Appellant moved
her legs apart with his leg and proceeded to have intercourse with E.S.  

Appellant=s niece, the girl whose hair was being
styled, came upstairs and was heard outside the door to the bedroom calling for
appellant.  Appellant replied, AI=m getting dressed.@  E.S. got up and
began putting her clothes on, and she saw appellant moving his hand on his
penis.  Appellant then pulled his pants on, moved a basket of some sort that
was blocking the door, and left the room.  








E.S.=s friend and one of E.S.=s sisters were in
the room next door and E.S. went into that room, crying and shaking.  She began
to tell the other girls what had happened, but   stopped because she saw
appellant looking through the door at her, and she became frightened of him. 
After she finished talking to the girls, E.S. went home, and her siblings
followed suit about ten minutes later.  

The following day, E.S. told her mother what happened in a
note.  After reading the note, her mother became upset and went across the
street and confronted appellant.  She came back to the house later and called
the police.  The police spoke to E.S., and she told them what happened to her. 
After her interview, the police told E.S.=s mother to take
her to a hospital.  E.S. was taken to the hospital where she was examined and a
rape kit was done.  E.S. and her mother later gave statements to Detective
Roscoe. 

Sandra Martin, a sexual assault nurse examiner at Memorial
Hermann Hospital, performed the sexual assault examination of E.S. on April 8,
2005, some 26 to 28 hours after the incident.  She testified that she did not
find any tears or bruising of E.S.=s hymen, but that 
E.S.  had Apoint tenderness,@ meaning it hurt
when touched.    E.S. also had point tenderness to her left groin and her right
hip and some point tenderness to both sides of her inner thighs.  There were
also superficial linear abrasions on her left and right thighs.  There was also
a bruise on her outer right thigh.    Martin testified that the lack of tearing
or bruising is unsurprising, and that it is very common to find no injury to
female genitalia when performing sexual assault exams.  On cross-examination,
Martin testified that DNA can be collected up to 96 hours after an assault. 
She also testified that she could not tell when the scratching or bruising
actually occurred.                








Colleen Himes, a Criminalist 2 with the Houston Police
Department Crime Laboratory, testified that she received for testing a sexual
assault kit containing a vaginal smear, anal smear, head hair combings, pubic
hair combings, vaginal swabs, anal swabs, known saliva swabs, fingernail
scrapings, p1 right hand, p2 left hand, hand and fingernail swabs,
undergarment/diapers, panties, and changing paper.   She also received a box
containing panties, denim shorts and a denim dress.  No sperm cells were found
in the vaginal and anal smears.  The vaginal and anal swabs, fingernail swabs
and undergarment/diapers, panties tested negative for a prostate-specific
antigen, and were therefore not forwarded for DNA testing.  No evidence of
bodily fluid was found on the panties, shorts, or   dress either.  On
cross-examination, Himes testified that the head hair and pubic hair combings
were not tested in any way.  She also testified that seminal fluid could be
detected on a floor up to eight hours, and that motile sperm cells could be
present up to 8 hours and nonmotile cells up to 144 hours, depending on
circumstances.  

Officer J.T. Roscoe, with the Houston Police Department
Juvenile Sex Crimes Division, testified that he interviewed E.S., E.S.=s sister, and E.S.=s mother.  He
testified that E.S.=s statement to him was consistent with her
statements to other police officers and to medical service providers.  E.S.
also identified appellant in a photo spread that Officer Roscoe showed her. 
Officer Roscoe said that E.S. told him that there was a knock at the door and
one of the girls called E.S.=s name before the sexual assault, rather
than during, and that when appellant disrobed E.S. she was near the closet,
rather than being held down on the bed.  Officer Roscoe admitted never
obtaining hairs from appellant to compare with the hairs taken from E.S. during
the sexual assault examination.  

E.S.=s sister testified that when E.S. went
upstairs to get the brush and comb, she stayed gone for a long time, and E.S.=s sister and one
of the neighbor children went upstairs to look for her.  When the two girls
looked upstairs, they checked all of the rooms, except one with the door shut. 
When one of the girls opened the door a little, appellant said, AI=m in here right
now,@ and the girls
shut the door and walked away.  She testified that E.S. eventually came back
downstairs, and did not appear upset, but that when the girls went home E.S.
started crying but would not say what was bothering her.  








Appellant called his sister, the neighbor at whose house
the assault took place, to the stand.  She testified that appellant had lived
with her for some time.  He slept on the couch in the home=s living room.  On
the day of the assault, appellant=s sister was out
of town, attending a court hearing in Orange.  She testified that when E.S.=s mother learned
of the incident she came over to the house and confronted appellant and B.J. 
She also testified that she had given instructions before she left for Orange
that she did not want the children to be allowed to play around appellant.  

Appellant=s niece also testified.  She was the young
girl who went searching for E.S. along with E.S.=s sister when E.S.
took a long time coming back from getting the brush and comb from upstairs. 
She testified that her hair had been done and she had gotten ready for bed and
had been watching television for a while when she and E.S.=s sister began
looking for E.S., who was playing hide and seek with E.S.=s little brother. 
She and E.S.=s sister looked outside, in the garage, in E.S.=s house, and then
came back over to her house and looked in the upstairs bedrooms, where they
accidentally walked in on appellant as he was changing clothes.  She testified
that she opened the door as appellant was pulling his pants down, that she did
not enter the room, the light was on in the room, and that she saw nobody in
the room with appellant.  She also testified that nobody was with her in the
hallway when this occurred.  She testified that she asked appellant if he had
seen E.S., and he said no.  She then closed the door and continued searching. 
She found E.S., apparently hiding, beside the niece=s  mother=s bed.  E.S. did
not appear upset.  At that point, E.S. and all of her siblings went to their
home.  Appellant=s niece did not remember E.S. ever going
upstairs to get a brush.  On cross-examination, she testified that she and E.S.=s sister went
searching for her after she left to get a brush, and that she was not in fact
alone when she walked in on appellant changing.  








Appellant=s cousin B.J. also testified for the
defense.  A barbecue had been started before he arrived in front of the home=s garage.  After
dinner, he, Leon, and appellant went to the garage to listen to music, write,
and rap.  Appellant and Leon were drinking an alcoholic beverage called
papason.  He testified that he did not remember appellant ever leaving the
garage that night.  He testified that he never saw or heard anything unusual
from any of the children that night.  He did not remember any of the children
leaving the house or coming outside to look for E.S.  He also admitted on
cross-examination that he and appellant are very closeCcloser than most
cousins and spend a great deal of time together. 

Analysis

A.      Standard
of Review 

When we review the factual sufficiency of evidence, we view
all the evidence in a neutral light, rather than in the light most favorable to
the verdict.  See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997).  We may set the verdict aside if the evidence is so weak that the
verdict is clearly wrong and manifestly unjust or if the verdict is against the
great weight and preponderance of the evidence.  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Prible v State, 175 S.W.3d 
724, 730 (Tex. Crim. App. 2005).  While we may disagree with the jury's
conclusions, we must exercise appropriate deference to avoid substituting our
judgment for that of the jury, particularly in matters of credibility.  Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); see also Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006) (stating that a Afactual
sufficiency review is >barely distinguishable= from a Jackson
v. Virginia legal sufficiency review.@).  In performing
our review, we must discuss the evidence that, according to appellant, most
undermines the jury verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003). 

B.      Evidence
Is Factually Sufficient

Appellant was
charged with aggravated sexual assault of a child.  The indictment reads, in
pertinent part, 

...that in Harris
County, Texas, John Henry Mearis, hereafter styled the Defendant, heretofore on
or about April 6, 2005, did then and there unlawfully, intentionally and
knowingly cause the penetration of the female sexual organ of [E.S.]
hereinafter called the Complainant, a person younger than fourteen years of age
and not the spouse of the Defendant, by placing his sexual organ in the female
sexual organ of the Complainant.  








Appellant
claims that the evidence is  factually insufficient to support his conviction,
pointing to the State=s failure to continue forensic testing on
head and pubic hair samples and possible seminal fluid evidence, and conflicts
in testimony between E.S. and defense witnesses B.J. and appellant=s niece.

A sexual assault victim=s uncorroborated
testimony alone can be sufficient to warrant a conviction.  See Tex. Code Crim. Proc. art 38.07; see
also Jensen v. State, 66 S.W.3d 528, 534 (Tex. App.CHouston [14th
Dist.] 2002, pet. ref'd) (AThe testimony of a victim[,] standing
alone, even when the victim is a child, is sufficient to support a conviction
for sexual assault.@).  

There is a great deal of evidence supporting the jury=s finding.  The
jury heard testimony from E.S. in which she clearly described the sexual
assault, and said unequivocally that she recognized appellant as the man who
assaulted her.  The jury also heard testimony of the nurse who performed the
sexual assault exam on E.S., who testified that E.S. had point tenderness of
the hymen and inner thighs and that there were bruises and scratches on her
upper legs.   The jury heard Officer Roscoe testify that E.S.=s account of the
incident was consistent as told to him, the responding officers, and the
medical personnel.  E.S.=s sister also testified that appellant was
upstairs in the bedroom with the door shut, while she and appellant=s niece searched
for E.S.  She also testified that upon coming home that night, E.S. was upset
and crying.  








The testimony of B.J., that appellant did not leave the
garage all evening, is at odds with E.S.=s testimony.  The
testimony of appellant=s niece also conflicts with E.S.=s testimony,
although she recanted some of those differences on cross-examination.  We note
that the defense  witnesses contradicted one another, B.J. saying that
appellant did not leave the garage the entire evening after dinner, and
appellant=s niece testifying that she walked in on appellant
changing his clothes in one of the upstairs bedrooms.  It was up to the jury to
decide the credibility of these witnesses.  See Drichas, 175 S.W.3d at
799.   The evidence on which appellant relies simply presents a different,
albeit inconsistent, version of events.  A decision is not manifestly unjust
merely because the jury resolved conflicting views of the evidence in favor of
the State.  Cain, 958 S.W.2d at 410.  

Appellant also points to the lack of forensic testing of
appellant=s head and pubic hairs, and the failure to search for
seminal fluid on the floor of the bedroom where the assault occurred.[1] 
However, the lack of physical or forensic evidence is merely Aa factor for the
jury to consider in weighing the evidence.@  Lee v. State,
176 S.W.3d 452, 458 (Tex. App.CHouston [1st Dist.] 2004), aff=d, 206 S.W.3d 620
(Tex. 2006).  It is not needed to corroborate E.S.=s testimony of
sexual assault.  See Tex. Code
Crim. Proc. art 38.07.  The jury had before it all the evidence it
needed to convict appellant of aggravated sexual assault of a child.  See
Glockzin v. State, 220 S.W.3d 140, 148 (Tex. App.CWaco 2007, pet.
ref=d) (holding that
when victim testified to facts establishing aggravated sexual assault, lack of
physical or forensic evidence did not demonstrate factual insufficiency); see
also Santos v. State, 116 S.W.3d 447, 459 (Tex. App.CHouston [14th
Dist.] 2003, pet. ref=d) (rejecting argument that lack of
fingerprints connecting defendant to robbery rendered evidence insufficient to
support conviction).  

The only evidence pointed to by appellant calls for us to
re-weigh the evidence, and substitute appellant=s opinion for the jury=s.  The jury had
before it all the evidence it needed to convict, and the evidence favoring
acquittal was not so strong as to render the jury=s verdict
manifestly unjust or against the great weight and preponderance of the
evidence.  See Johnson, 23 S.W.3d at 11.  

 

 








Conclusion

Finding the evidence factually sufficient, we overrule
appellant=s sole issue, and affirm the judgment of the trial
court.  

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment rendered
and Memorandum Opinion filed July 31, 2007.

Panel consists of
Justices Anderson, Fowler, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 

 









[1]  We assume that appellant is complaining of the
failure to recover seminal fluid from the floor of the bedroom when he mentions
in his brief the failure to continue testing on Apossible seminal fluid evidence.@ 
Appellant does not identify or explain the possible seminal fluid evidence on
which he relies.