NUMBER 13-06-026-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


THOMAS ANTHONY KOOLE, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 357th District Court of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 A jury found appellant, Thomas Anthony Koole, guilty of sexual assault of a child. (1) 
The jury assessed punishment at nine-and-a-half years' imprisonment. In three issues,
appellant contends: (1) the trial court erred in denying his motion for mistrial during the
punishment phase based on prosecutorial misconduct; (2) the trial court erred in denying 
his motion for mistrial during the guilt/innocence phase based on two jurors' exposure to
media coverage of the trial; and (3) the jury charge erroneously instructed the jury as to the
victim's date of birth, relieving the State of the burden of proving an element of the offense. 
We affirm. 

I. Background 


 A police officer approached appellant's pickup, which was parked in a movie theater
parking lot. The officer observed appellant and a female engaged in sexual intercourse. 
The officer tapped on the pickup window and asked appellant to exit. Appellant identified
himself and told the officer he was twenty-one years old. The officer asked appellant for
his driver's license, which reflected that appellant was twenty-six years old. The officer
then questioned the female, M.R., who first told the officer she was seventeen, but then
admitted she was fifteen. The officer contacted M.R.'s mother, who was inside the movie
theater.

II. Prosecutorial Misconduct 


 In his first issue, appellant complains of prosecutorial misconduct during the
punishment phase of trial. Dr. David Moron, a psychiatrist, testified that in his opinion,
appellant presented a very "low risk" of future dangerousness. On cross-examination, the
prosecutor asked Dr. Moron, "And let me ask you this: Do you want him to babysit your
son?" (2) Appellant's counsel objected and asked for a limiting instruction. The trial court
sustained the objection and instructed the jury to disregard the question. Appellant's
counsel asked for a mistrial, which the trial court denied. 

A. Standard of Review and Applicable Law 

 When the trial court sustains an objection and instructs the jury to disregard, but
denies the defendant's motion for a mistrial, the issue is whether the trial court abused its
discretion in denying the mistrial. (3) We uphold the trial court's ruling if it was within the zone
of reasonable disagreement. (4) In determining whether the trial court abused its discretion,
we apply a tailored version of the factors described in Mosley v. State: (5) (1) the severity of
the misconduct (prejudicial effect), (2) the curative measures taken, and (3) the certainty
of the punishment assessed absent the misconduct (likelihood of the same punishment
being assessed). (6) "Only in extreme circumstances, where the prejudice is incurable, will
a mistrial be required." (7) "Ordinarily, a prompt instruction to disregard will cure error
associated with an improper question and answer." (8) Generally, we presume the jury
follows the trial court's instructions and that a limiting instruction cures any harm. (9) 

B. Analysis 

 Appellant complains that the trial court's instruction to disregard was insufficient to
cure the error associated with the improper question. The conduct was not severe. The
improper question ("Do you want [appellant] to babysit your son?") occurred in the context
of the State's attempt to undermine Dr. Moron's opinion that appellant did not present a
serious future threat for sexual activity with minors. Dr. Moron had already testified that
appellant had no history of involvement with under-age women; appellant's two prior
relationships (one was his marriage) were with adult women. According to Dr. Moron,
appellant had a pattern of "needing to rescue people;" he showed no signs of being
attracted to children for sexual purposes. On cross-examination, the prosecutor attempted
to impeach Dr. Moron's opinions by establishing that appellant had "lied" to Dr. Moron
regarding several matters. As noted, the trial court sustained appellant's objection and
instructed the jury to disregard the question. We presume the jury followed the trial court's
instructions. (10) Under these facts, we conclude that, in sustaining appellant's objection and
instructing the jury as it did, the trial court sufficiently ameliorated any potential harm. (11) 

 When reviewing the certainty of the punishment assessed absent the alleged
improper argument, we consider appellant's prior and present convictions. (12) The range of
punishment for the convicted offense was two to twenty years' imprisonment and up to a 
$10,000 fine. (13) The State urged the jury to impose the maximum sentence of twenty years. 
Appellant's counsel asked the jury to impose community supervision. The jury chose a
mid-range sentence of nine-and-a-half years. There was no evidence of prior felony
convictions. During the punishment phase, the jury heard evidence that in mid-January
2005, a few months after the initial sexual encounter, appellant contacted M.R. and
continued his consensual sexual relationship with her by staying in her bedroom, ostensibly
without her family's knowledge, for several weeks. M.R. testified that appellant bought a
lock and installed it on her bedroom door. M.R. testified that during some of their sexual
encounters, she consented to sex because she didn't want appellant to get "mad" at her
and didn't want him to hurt her. We conclude that it is unlikely that the improper question 
had any effect on the punishment assessed. Considering all three Mosley factors, we hold
that the trial court did not abuse its discretion in denying appellant's motion for mistrial. We
overrule his first issue. 

III. Prejudicial Publicity


 In his second issue, appellant contends the trial court erred in denying his request
for a mistrial. Appellant moved for a mistrial on the second day of trial based on two jurors'
admissions that they had seen or read news reports about the case. 

A. Standard of Review 

 A trial judge has considerable discretion in ruling on the issue of prejudice allegedly
resulting from jurors' exposure to news stories concerning the trial. (14) "Every claim of jury
prejudice because of media attention appearing during a trial must turn on its own facts." (15)
In determining possible mid-trial prejudice due to publicity, the trial court must first, (1) "look
at the nature of the news material in question and determine whether it is innately
prejudicial," and second, (2) "ascertain the likelihood that the publicity has in fact reached
the jury." (16) Generally, a trial court's instruction to disregard any outside information
concerning the trial is sufficient to ensure a fair trial. (17) 

B. Analysis 

 Here, the news stories that appellant claims "tainted" the jury were (1) a television
news report and (2) a newspaper article. (18) Outside the presence of the jury, appellant's
counsel argued that the news reports contained "extraneous information" that would have
a "prejudicial effect" against appellant. According to appellant's counsel, the stories made
reference to appellant "hid[ing] in the closet." The trial court asked if the jurors had seen
the news stories; two jurors admitted that they had. The trial court asked the jurors if
seeing or hearing the news stories had hindered their ability to decide the case based
solely on the evidence. Both jurors told the court they were not affected by the news
stories and that they could decide the case based solely on the evidence. The trial court
admonished the panel that the case must be decided solely on the evidence and nothing
else. Appellant's counsel requested a mistrial, noting that "the article and the television
broadcast both mention things outside the scope of the information presented here at trial." 
The trial court denied the request.

 Because neither news report was admitted into evidence, we cannot determine
whether the nature of the news material is "innately prejudicial." (19) Based on these facts,
we believe the trial court's admonishment to disregard the media coverage was sufficient
to ensure appellant a fair trial. (20) We conclude the trial court did not abuse its discretion in
denying appellant's request for a mistrial. We overrule appellant's second issue. 

IV. Charge Error 


 In his third issue, appellant contends the jury charge erroneously instructed the jury
as to M.R.'s birth date, which "removed this essential element from the fact-finding role of
the jury" and thus constituted "an instruction to find Appellant guilty if the jury believed he
had engaged in sexual intercourse with the alleged victim." (21) The State responds that
there was no charge error because the application paragraph contained no reference to
either the instruction on limitations or M.R.'s birth date, and therefore, did not relieve the
jury of its duty to find that M.R. was under the age of seventeen at the time of the offense.

A. Standard of Review 

 The review of jury charge error is a two-step process. We first determine whether
error occurred, and we then determine whether there is sufficient harm to warrant
reversal. (22) The jury is only authorized to convict on the basis of the application paragraph. (23) 


B. Analysis 

 We agree with the State that there was no error in the charge because the
application paragraph, which authorizes conviction, contained no reference to M.R.'s date
of birth. Moreover, we note that the prosecutor, in closing argument, reminded the jury that
the State was required to prove that M.R. was younger than seventeen at the time of the
offense. (24) We hold there was no error in the jury charge. We overrule appellant's third
issue.

V. Conclusion 


 We affirm the trial court's judgment. 


 

 LINDA REYNA YAÑEZ,

 Justice




Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 24th day of August, 2007. 
1. See Tex. Penal Code Ann. § 22.011(a)(2), (f) (Vernon Supp. 2006).
2. Dr. Moron testified that he has a thirteen-year-old son. 
3. Hawkins v. State, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004); see also Primes v. State, 154
S.W.3d 813, 814 (Tex. App.-Fort Worth 2004, no pet.) (mem. op.).
4. Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (citing Wead v. State, 129 S.W.3d 126,
129 (Tex. Crim. App. 2004)).
5. Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). 
6. Hawkins, 135 S.W.3d at 77. 
7. Id. 
8. Ovalle v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam). 
9. Moore v. State, 882 S.W.2d 844, 847 (Tex. Crim. App. 1994). 
10. See id. 
11. See Archie, 221 S.W.3d at 700.
12. See Hawkins, 135 S.W.3d at 85. 
13. See Tex. Penal Code Ann. § 12.33 (Vernon 2003). 
14. Marshall v. United States, 360 U.S. 310, 312 (1959). 
15. Ladner v. State, 868 S.W.2d 417, 423 (Tex. App.-Tyler 1993, pet. ref'd) (citing Marshall, 360 U.S.
at 312).
16. Id. 
17. Herbst v. State, 941 S.W.2d 371, 377-78 (Tex. App.-Beaumont 1997, no pet.) (citing Powell v.
State, 898 S.W.2d 821, 828 (Tex. Crim. App. 1994)). 
18. Neither the television report nor the newspaper article was introduced into evidence. 
19. See Ladner, 868 S.W.2d at 423. A copy of the newspaper article is included in the "exhibits
volume," but the record shows that it was offered into evidence, but not admitted. 
20. See Powell, 898 S.W.2d at 828; Herbst, 941 S.W.2d at 378. 
21. Paragraph 3 of the charge, of which appellant complains, stated:


 You are instructed that the State is not bound by the specific date alleged in the
indictment. The date of the offense as alleged is immaterial provided that the offense was
committed prior to the filing of the indictment, in this case being May 18, 2005, and within the
period of limitations, in this case being ten (10) years from the eighteenth (18th) birthday of
the victim of the offense. You are further instructed that the birth date of [M.R.] is January
17, 1989. 
22. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); Almanza v. State, 686 S.W.2d 157, 174
(Tex. Crim. App. 1984).
23. Glockzin v. State, 220 S.W.3d 140, 150 (Tex. App.- Waco 2007, pet. ref'd ) (citing Campbell v.
State, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995)). Here, the application paragraph provided:


 Now if you find from the evidence beyond a reasonable doubt that on or about the
28th day of November, 2004, in Cameron County, Texas, [appellant] did then and there
intentionally or knowingly cause the penetration of the sexual organ of [M.R.], a child who
was then and there younger than 17 years of age and not the spouse of the defendant, by
the defendant's sexual organ, then you will find the defendant guilty of Sexual Assault of a
Child as charged in the indictment.


 Unless you so find from the evidence beyond a reasonable doubt, or if you have a
reasonable doubt thereof, you will find the defendant not guilty. 
24. The State's closing argument included the following:


 And we also have to prove to you that the child was less than 17 years-old. And we
did. [M.R.] told you, "I was 15 at that time."