Opinion Issued December 4, 2008









Opinion Issued December 4,
2008

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 










 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00081-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



ANTHONY WADE BROWN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 338th District Court

Harris County, Texas

Trial Court Cause No. 1048441








 



MEMORANDUM OPINION

          Anthony Wade Brown appeals
his conviction for first degree felony murder.  Brown pleaded not guilty.  The
jury found Brown guilty, and the trial court assessed punishment at forty-five
years’ confinement.  In three issues, Brown contends that the evidence is
legally and factually insufficient to support a guilty verdict, and that he was
unfairly prejudiced by an improperly admitted hearsay statement.  We conclude that
the evidence is legally and factually sufficient to support his conviction, and
that the contested statement was properly admitted.  We therefore affirm. 

Background

          On the evening of November 25, 2005,
Anthony Wade Brown and Michael Jnlouis, also known as “Twin” and “Yane”
respectively, went to Tyrone Norris’s apartment looking for Christy Wallen.  Norris
told Brown and Jnlouis that Wallen was not there, and they left.  Later that
night, Wallen arrived at Norris’s home, and he informed her that Brown and
Jnlouis were looking for her.  Approximately five minutes later, Jnlouis and
Brown returned to Norris’s apartment to find Wallen.  At the same time, Marie
Mojica and another man were in the back bedroom of the apartment where they had
been drinking, smoking crack cocaine, and watching a movie with Norris.

Norris testified that he let Brown
and Jnlouis into the apartment so they could talk to Wallen, and the three of
them began to argue about the “stuff” that they believed she had taken from
them.  According to Norris, either Brown or Jnlouis slapped Wallen, and Norris
told them to take their conflict out of his apartment.  Jnlouis and Brown began
to drag Wallen out of the apartment.  Wallen resisted and asked Norris for
help, but Norris continued to tell the three of them to “get out of here with
it” because he did not want to be involved in the altercation.  Norris
testified that Wallen continued to wrestle with the men as they attempted to
drag her out of the apartment, and then he heard two gunshots.  He testified
that he never saw a firearm, but that he saw sparks when the shots were fired. 
He could not tell who fired the shots because it was dark in the apartment. 
Norris further testified on cross-examination that there was a third man whom
he had never seen before at the apartment with Brown and Jnlouis.  After the
gunshots, Norris started “screaming and hollering” in terror and ran out of the
apartment.  

Marie Mojica testified that she was
in the back bedroom of Norris’s apartment when she heard Wallen asking Norris
for help.  She testified that she did not see anyone come into the apartment
because she was in the back bedroom, but she heard Wallen arguing with someone
over “dope” and became scared.  She testified that there was a woman in the
front room where Norris, Wallen, Brown and Jnlouis were.  She heard the woman
say, “Twin, don’t mess up your life like this, don’t do this,” and then she
heard a gunshot.  She ran out of the apartment to someone’s house across the
street.  At trial, Brown objected to the statement as hearsay.  The trial court
judge overruled the objection.   

Later, police questioned Norris and
Mojica.  Both identified Brown and Jnlouis[1] in police photo spreads
as having been at the apartment on the night of the murder.

          Officer A. Arevalo of the
Houston Police Department arrived at the scene of the incident and found a dead
female lying on her side in a large pool of blood, just inside the threshold of
Norris’s apartment.  After preserving the scene, he searched the apartment and
found no one else inside. Officer Arevalo then found Norris nearby and
identified him as a potential witness.  Officer C. Scales and Officer M. Scott
questioned Norris and Mojica in the months following the crime.

          Clay Davis, a criminalist
with the Houston Police Department Crime Lab, compared the DNA samples of the
items found at the scene with the DNA samples of Norris, Brown, Wallen, and
Jnlouis.  Davis’s comparison excluded Brown and Jnlouis from being major
contributors to the DNA samples of Wallen’s left and right fingernail
scrapings, her pants, and the bandana that was found at the scene. The
comparison also excluded Brown as being a contributor to the DNA profile found
on the ski mask, but Jnlouis could not be excluded, meaning that there was an
extremely high chance that Jnlouis was one of two contributors to the DNA on
the mask. 

          Dr. Stephen Wilson
performed an autopsy on Wallen’s body. He found gunshot wounds on her head,
neck, and right hand.  Dr. Wilson also found a number of contusions, abrasions,
and scraping injuries on her skin.  He testified that some of them were old
injuries, but others were recent and may have been caused by a physical altercation
shortly before her death.  Dr. Wilson concluded that Wallen died as a result of
a gunshot wound that was inflicted at a close range.  He also found that there
was cocaine in her system at the time of the incident.

Christie Carrington testified that
Brown and Jnlouis were with her during the entire weekend of Wallen’s murder.  She
testified that she picked them up at around three or four o’clock on Friday
afternoon and drove them to her house to attend a party there.  She returned
them to one of their mothers’ homes on Sunday after she answered a call from
the police on either Brown of Jnlouis’s cell phone.  She further testified that
neither Jnlouis nor Brown had a car, and that the scene of the murder was thirty-five
to forty minutes away from her home.  Carrington had multiple prior theft
convictions, and she did not tell the investigating officers that Jnlouis and
Brown were with her the night of the murder. 

Legal and Factual Sufficiency

          In his first and second
issues, Brown contends that the evidence is legally and factually insufficient
to support a guilty verdict because the State presented no evidence proving that
he either caused Wallen’s death or was a party to her murder.  In particular,
Brown observes that the scientific evidence does not incriminate him, and the
witnesses who testified against him are unreliable.  

Standard of Review

When evaluating the legal sufficiency
of the evidence, we view the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175
S.W.3d 795, 798 (Tex. Crim. App. 2005).  The standard is the same for both
direct and circumstantial evidence cases.  King v. State, 895 S.W.2d
701, 703 (Tex. Crim. App. 1995).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this is the
function of the trier of fact.  See Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421 (Tex.
Crim. App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App.
1991).  

When evaluating factual sufficiency,
we consider all the evidence in a neutral light to determine whether the jury
was rationally justified in finding guilt beyond a reasonable doubt.  Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We set aside a
verdict only if (1) the evidence is so weak that the verdict is clearly wrong
and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence.  Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  Under the first prong of Johnson, we cannot conclude that a
verdict is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury.  Watson, 204 S.W.3d at 417.  Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply
because we disagree with the jury’s resolution of that conflict.  Id.  Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury’s verdict.  Id.  We must also discuss the
evidence that, according to the appellant, most undermines the jury’s verdict. 
See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  

Murder and the Law of Parties

          A person commits the felony
offense of murder if he “intentionally or 

knowingly causes the
death of an individual [or] intends to cause serious
bodily injury and commits an act clearly dangerous to human life that causes
the death of an individual.” Tex. Penal
Code Ann. § 19.02(b) (Vernon 2007).  Under the law of parties, “A person
is criminally responsible as a party to an offense if the offense is committed
by his own conduct, by the conduct of another for which he is criminally
responsible, or by both.” Tex. Penal
Code. Ann. § 7.01(a); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). 

A person is “criminally responsible” for the conduct of another
if, “acting with the intent to promote or assist the commission of the offense,
he solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense.” Tex. Penal Code
Ann. § 7.02(a)(2); Vodochodsky, 158 S.W.3d at 509. The mere
presence of the accused at the scene of the murder is insufficient to support a
conviction. King v. State, 638 S.W.2d 903, 904 (Tex. Crim. App. 1982).  But
such evidence may be sufficient to convict a defendant under the law of parties
if it shows that he is both physically present at the commission of the offense
and encourages the commission of the offense, either by words or by other
agreement.  Salinas v. State, 163 S.W.3d 734, 739 (Tex. Crim. App. 2005).  The presence of the defendant at the scene, combined with the
totality of the circumstances, may suffice to show that the accused was a
participant in the murder. Beardsley v. State, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987).

Legal Sufficiency

           Brown contends that the
evidence is legally insufficient to support a guilty verdict because there is
no evidence that he shot Wallen, or that he knew Jnlouis was armed or agreed
with Jnlouis to do anything more than assault or harass Wallen for stealing
drugs.  He points to the fact that the scientific evidence does not incriminate
him, and that the witnesses’ testimony is unreliable. 

          Although the scientific evidence does
not incriminate Brown, other evidence proves that Brown was at the scene of the
crime.  Both Norris and Mojica testified that Brown and Jnlouis were at Norris’s
apartment that night and that they were fighting with Wallen.  Brown further
argues that the evidence is insufficient because neither Norris nor Mojica saw
Brown shoot Wallen.  However, intent to kill can be inferred from the
circumstances surrounding the use of a deadly weapon.  See Godsey v. State,
719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986) (holding that the defendant’s
pulling a loaded revolver and aiming it at two officers was sufficient to
establish intent to kill); see also Thompson v. State, 36 S.W. 265, 266
(Tex. Crim. App. 1896) (holding that defendant’s pointing a gun at a sheriff
was enough to infer that he intended on using it); Patrick v. State, 906
S.W.2d 481, 487 (Tex. Crim. App. 1995) (“Intent [to kill] can be inferred from
the acts, words, and conduct of the accused[,] [as well as] the extent of the
injuries.”). Furthermore, the identification of the defendant by an eyewitness
is not essential to prove that he was the perpetrator of a crime; direct or
circumstantial evidence may be enough. See Green v. State, 124 S.W.3d
789, 792 (Tex. App.–––Houston [1st Dist.] 2003, pet. ref’d) (holding that
defendant’s threats recorded on victim’s answering machine, history between
victim and defendant, testimony that defendant fled scene, and identification
of defendant’s car supported finding defendant was perpetrator).

Mojica testified that she heard a
woman say, “Twin, don’t mess up your life like this.  Don’t do this,” and then
she heard a gunshot.  Even though neither witness could see the shooter, “Twin”
is Brown’s nickname, and thus the jury could reasonably have inferred from the
evidence that Brown shot Wallen or assisted the shooter in the murder.   

We hold that, under the law of
parties, a jury reasonably could infer from the totality of the circumstances
that Brown was a party to the crime. See Cordova v. State, 698 S.W.2d
107, 111 (Tex. Crim. App. 1985) (citing Medellin v. State, 617 S.W.2d
229 (Tex. Crim. App. 1981) (holding that a court may look to the events
occurring before, during, and after the commission of an offense to determine
if the accused was a party to the crime); see also Goodman v. State, 66
S.W.3d 283, 296 (Tex. Crim. App. 2001) (finding that circumstantial evidence is
as probative as direct evidence in establishing the guilt of an actor). The
evidence shows, and Brown concedes, that Brown and Jnlouis assaulted Wallen the
night of the incident.  Witnesses heard gunshots immediately after the
altercation.  Mojica testified that Brown and Jnlouis “always” had guns with
them.  Brown and Jnlouis
were at Norris’s apartment when Wallen was shot, which occurred at the same
time that they were fighting with Wallen over drugs that they had accused her
of stealing. Brown and Jnlouis forcibly dragged Wallen out of the apartment
and, soon after that, one of them shot her.  Even if Jnlouis shot Wallen, the jury could reasonably infer
that Brown was a party to Wallen’s murder.[2] 

Factual Sufficiency

          Brown asserts that the evidence is
factually insufficient for the same reasons that he argues the evidence is
legally insufficient, and observes that a witness offered an alibi for his
whereabouts at the time of the murder.  He further notes that, because Norris
and Mojica had been using drugs and neither of them saw Brown holding a gun or
shooting Wallen, their testimony is unreliable and fails to prove that Brown
killed Wallen. 

The fact-finder alone determines the
weight to place on contradictory testimonial evidence because that determination
depends on the fact-finder’s evaluation of credibility and demeanor.  Cain
v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997).  As the determiner
of the credibility of the witnesses, the fact-finder may choose to believe all,
some, or none of the testimony presented.  Id. at 407 n.5.  The
fact-finder is the exclusive judge of the witnesses’ credibility and the weight
to be given to their testimony.  Jones v. State, 944 S.W.2d 642, 648
(Tex. Crim. App. 1996).   On appellate review, we may not re-weigh the evidence
and substitute our judgment for that of the fact-finder. Johnson v. State,
967 S.W.2d 410, 412 (Tex. Crim. App. 1998); see also Wilson v. State,
863 S.W.2d 59, 66 (Tex. Crim. App. 1993); King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000).

Norris and Mojica’s testimony do not
correspond on all of the events on the night of the murder, but the defense had
the opportunity to expose any inconsistencies in their testimony.  The weight
to be given to contradictory testimony is within the sole province of the
jury.  Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000).  The jury was free to believe Mojica’s
testimony that a woman in the front room said, “Twin don’t mess up your life. 
Don’t do this,” even though Norris testified that there was no other woman in
the apartment.  See
Glockzin v. State,
220 S.W.3d 140, 147 (Tex. App.—Waco 2007, pet. ref’d) (observing that jury was
free to rely on victim’s testimony rather than that of defendant or other
witnesses, and disregard any inconsistencies); see also Perez v. State, 113 S.W.3d 819, 838–39 (Tex. App.—Austin
2003, pet. ref’d).  The jury was also free to disbelieve Christie Carrington’s
alibi testimony.  We cannot hold that the jury’s decision is manifestly unjust merely because it
resolved conflicting views of the evidence in favor of the State.  Cain,
958 S.W.2d at 410. 

Brown also contends that Brown’s “mere
presence” at the apartment is insufficient to prove that he killed Wallen or
was a party to her murder.  Brown was present at Norris’s apartment, but other
circumstances also exist:  he and Jnlouis assaulted Wallen, demanded drugs from
her, and cooperated in an effort to drag her outside of the apartment.  “The
jury maintains power to draw reasonable inferences from the basic facts to the
ultimate facts.”  Welch v. State, 993 S.W.2d 690, 693 (Tex. App.––San Antonio 1999, no pet.).  The evidence supports an inference that Brown was not
merely a bystander, but rather a participant in the assault and murder.  We
hold that Brown’s presence, his involvement in the assault, and the surrounding
circumstances, when viewed
in a neutral light, is not so obviously weak or contrary to the overwhelming
weight of the evidence as to be factually insufficient.

Hearsay Testimony

          In his last issue, Brown
contends that the trial court abused its discretion by admitting hearsay
testimony over his objection. We review a trial court’s decision to admit
evidence under an abuse of discretion standard.  Torres v. State, 71
S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse a trial court’s
ruling unless that ruling falls outside the zone of reasonable disagreement.  Burden
v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  

Hearsay is an out-of-court statement
offered at trial to prove the truth of the matter asserted.  Tex. R. Evid. 801(d) (Vernon 2003). 
Hearsay is not admissible absent an exception.  Tex. R. Evid. 802 (Vernon 2003).  Here, the State elicited Mojica’s
testimony that she heard a woman in the front room say, “Twin don’t mess up
your life like this. Don’t do this.” The State offered the statement to identify
Brown as a perpetrator of the crime.  The statement conveyed events as the
witness perceived them.  Thus, it falls within the present sense impression
exception to the hearsay rule.  See Tex.
R. Evid. 803(1) (Vernon 1998).  A present
sense impression is a statement describing or explaining an event or condition
made while the declarant was perceiving the event or condition, or immediately
thereafter.  Id.  Mojica testified that the woman made the
statement in response to the argument that she was observing between Brown,
Jnlouis, and Wallen.  See Jacobs v. State, No. 01-86-0136-CR, 1987 WL
10540, at *2–3 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (mem. op., not
designated for publication) (holding that where the witness was in the next
apartment and heard the victim’s sister scream “Someone help.  Please help. 
He’s going to shoot her,” the statement was an excited utterance).  Moreover, testimony
that tends to show that the defendant is a suspect and explains the
circumstances leading up to the murder is admissible.  See Porter v. State,
623 S.W.2d 374, 385 (Tex. Crim. App. 1981) (holding that statements made
about communications between police officers and dispatchers were admissible at
trial to show circumstances leading up to shooting); Parker v. State,
192 S.W.3d 801, 807 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d) (holding
that officer’s statements about tips received from a confidential informant
were admissible to show circumstances leading up to appellant’s arrest).  We
hold that this testimony was admissible under an exception to the hearsay rule,
and thus the trial court did not abuse its discretion in admitting it over
Brown’s hearsay objection.  

Conclusion

We conclude that legally and
factually sufficient evidence supports the verdict and that the trial court did
not abuse its discretion in admitting the complained of evidence.  Accordingly,
we affirm the judgment of the trial court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Jennings,
Hanks, and Bland.

Do not publish.  Tex. R. App. P. 47.4.









[1] Norris and Mojica could only identify Brown and
Jnlouis by their nicknames, Twin and Yane respectively, as they did not know
their real names.  At trial, Norris could no longer remember which was Twin and
which was Yane.





[2] Brown further contends that Norris and Mojica are
unreliable witnesses because both were using drugs on the night of the murder,
and Norris also had a criminal record.  In a legal sufficiency analysis, we
view the evidence in a light most favorable to the State, and therefore do not
evaluate the credibility of witnesses.  See Dewberry, 4 S.W.3d at 740.