

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00120-CR

**ROBERT WALTER BONNER,**

                                **Appellant**

**v.**

**THE STATE OF TEXAS,**

                                **Appellee**

---

**From the 413th District Court**
**Johnson County, Texas**
**Trial Court No. F42790**

---

## MEMORANDUM OPINION

---

A jury convicted Robert Walter Bonner of six counts of aggravated sexual assault of a child, four counts of indecency with a child, and two counts of inducing a child to engage in sexual conduct or a sexual performance. The jury sentenced Bonner to ninety-nine years' imprisonment for the aggravated sexual assault convictions and twenty years' imprisonment for the other convictions. Bonner contends in five issues that: (1) the evidence is factually insufficient; (2) the court abused its discretion by admitting extraneous-offense evidence; (3) he received ineffective assistance of counsel;

(4) the prosecutor engaged in "serious and pervasive" misconduct; and (5) the court abused its discretion by several rulings made during the course of the trial. We will affirm.

## Background

The attention of law enforcement officials was first drawn to Bonner in May 2007 when his five-year-old son N.B. told a school resource officer that Bonner was growing marijuana in the home. Officers searched Bonner's home pursuant to a search warrant and recovered 646 marijuana plants, multiple computers, and about 1,400 CD's and DVD's. Child Protective Services removed his step-daughter L.D., his daughter M.B., and his son N.B. from the home.

A forensic interview was conducted with each of the children at the Child Advocacy Center in November 2007, but no outcry was made. One month later, N.B. told his grandmother that he had seen Bonner "sexing" L.D. She reported this to CPS which did not pursue the matter because there had been no outcry during the November interviews. N.B. told a counselor the same thing in January 2008. A friend of L.D.'s, eleven-year-old K.A., made an outcry to officials in Indiana where her family had moved the previous summer. L.D. made an outcry to her mother in April 2008. During a second forensic interview in May, L.D. described what Bonner had done to her and to her twelve-year-old friend E.S. A forensic interview with E.S. was conducted several days later, and she described in a similar manner what Bonner had done to the girls.

A pediatric nurse testified that she examined L.D. in May 2008, about twelve months after she was last sexually assaulted, and found no physical evidence that L.D. had been sexually assaulted. The nurse explained that this is normal given the passage of time. The sexual assault examination for E.S. was done about eighteen months after she was last sexually assaulted. As with L.D., this exam disclosed no physical evidence that E.S. had been sexually assaulted.

The twelve counts of the indictment each allege an offense involving L.D. The two counts of inducing a child to engage in sexual conduct or a sexual performance involve L.D. and E.S.

### Factual Insufficiency

Bonner contends in his first issue that the evidence is factually insufficient due to a "complete lack of physical evidence" and due to conflicts and inconsistencies in the evidence.

In a factual insufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Witt v. State*, 237 S.W.3d 394, 396 (Tex. App.—Waco 2007, pet. ref'd).

Between the testimony of L.D. and E.S. and the content of their videotaped interviews which were admitted in evidence, the State presented affirmative evidence on each element of the offenses alleged in the indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 2005); *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus

Christi 2008, no pet.) ("The testimony of a child sexual abuse victim alone is sufficient to support a conviction for indecency with a child or aggravated sexual assault.").

Bonner contends that the absence of physical evidence and conflicts and inconsistencies in the testimony render the evidence factually insufficient. We disagree. The absence of physical evidence does not render the evidence factually insufficient. *Glockzin v. State*, 220 S.W.3d 140, 148 (Tex. App.—Waco 2007, pet. ref'd). Rather, the absence of physical evidence is a factor for the jury to consider in weighing the evidence. *Id.*

Any discrepancies in the witnesses' testimony go to the credibility of the witnesses and the weight to be given their testimony. It is solely within the province of the jury to resolve credibility issues and determine the weight to be given the testimony. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *Glockzin*, 220 S.W.3d at 147.

Having reviewed the evidence in a neutral light, we cannot say that the proof of guilt is so weak or the conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *See Glockzin*, 220 S.W.3d at 148. Accordingly, the evidence is factually sufficient, and we overrule Bonner's first issue.

### Extraneous-Offense Evidence

Bonner argues in his second issue that the court abused its discretion by admitting extraneous-offense evidence regarding: (1) the marijuana recovered from his home; (2) child pornography found on some of the computer disks recovered from the home; and (3) evidence of his involvement in his wife Amanda's use of

methamphetamine. Specifically, Bonner argues that the probative value of the challenged evidence is substantially outweighed by the danger of unfair prejudice.

The State contends that Bonner has not preserved this complaint for appellate review. We agree with regard to the marijuana and Amanda's methamphetamine use.

Officer Don Adams testified about the search of Bonner's home. He testified at length about the marijuana plants recovered from Bonner's home, the "two large carousel type systems that contained marijuana plants that rotated around a light bulb," and other items used by Bonner to cultivate, package and distribute marijuana. Bonner made one leading objection during Adam's testimony. He objected again when Adams testified about finding "a glass smoking pipe and a quantity of methamphetamine."[1] Bonner asked that a limiting instruction be given to the jury with regard to the methamphetamine evidence. The judge did so. Adams then gave additional testimony about the marijuana and related items found in Bonner's home without objection.

Bonner did not urge an objection under Rule 403 or 404(b) with regard to the marijuana evidence. Thus, he failed to preserve his complaint regarding the admissibility of this evidence. *See* TEX. R. APP. P. 33.1(a)(1); *Shedden v. State*, 268 S.W.3d 717, 738-39 (Tex. App.—Corpus Christi 2008, pet. ref'd).

The trial court granted Bonner's requested limiting instruction with regard to the scant evidence of methamphetamine usage offered during the State's case-in-chief.

---

[1] This was the only reference to methamphetamine during the State's case-in-chief. Bonner called Amanda as a defense witness. She testified that the methamphetamine recovered from the house was hers. On cross-examination, she testified without objection that she initially got methamphetamine from a friend but later relied on Bonner to supply it. In his own testimony, Bonner denied supplying Amanda with methamphetamine.

Thus, he failed to obtain an adverse ruling concerning this evidence. *See* TEX. R. APP. P. 33.1(a)(2); *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007); *Ashire v. State*, 296 S.W.3d 331, 343 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

When Adams testified that he took the seized computers and disks to the Secret Service for examination, Bonner promptly approached the bench for a hearing outside the presence of the jury because he anticipated that Adams was about to testify that the Secret Service was going to examine these items for evidence of child pornography. The trial court excused the jury for lunch then conducted a hearing outside the jury's presence regarding the admissibility of this evidence. At the beginning of this hearing, Bonner objected that "any probative value of [the challenged evidence] is outweighed by the prejudicial effect." The State argued that the evidence was admissible because the complainants had testified that Bonner showed them "pornographic pictures of children and adults." In addition, the State proposed to offer only two 30-second video segments in order to minimize the prejudicial effect of the evidence. The court ruled that it would allow this evidence to be admitted "over [Bonner's] objections."

When the State called Deputy Jay Stubbs to testify about the pornography found on the disks, Bonner requested another hearing outside the presence of the jury. After Stubbs was questioned by both attorneys, Bonner objected on several grounds including chain of custody and relevance. The court informed the parties that it was going to permit Stubbs to testify and the State to play the two 30-second segments previously addressed.

Before the jury, Stubbs testified that he reviewed "[p]robably a hundred, hundred and fifty" of the seized disks. He estimated that "25 to 50" of these contained "some sort of pornography." Concerning the DVD the State offered in evidence, Stubbs testified that it contained "normal adult pornography" and "some of it appears to be child pornography." Before the DVD was played for the jury, Bonner re-urged his objections under "Rule 901, Rule 104(b), Rule 403, and Rule 404(b)." The court overruled these objections.

Bonner vigorously and repeatedly objected to the admission of any evidence of child pornography under Rule 403 and on other grounds. He preserved this aspect of his complaint for appellate review.

L.D. and E.S. testified that Bonner made them watch pornographic images and videos depicting both children and adults. L.D. testified that sometimes Bonner made her perform acts depicted in the pornographic images she was forced to watch. E.S. testified that he would make them remove their clothing as they were watching the videos then sexually assault them afterward.

Based on this testimony, the evidence regarding child pornography found on the DVD's constitutes same-transaction-contextual evidence. *Redwine v. State*, No. 09-03-00566-CR, 2005 Tex. App. LEXIS 1796, at *6-7 (Tex. App.—Beaumont Mar. 9, 2005, no pet.) (not designated for publication); *see Wyatt v. State*, 23 S.W.3d 18, 25-26 (Tex. Crim. App. 2000). The evidence of child pornography "was so intertwined with the [sexual assaults of L.D. and E.S.] that the jury's understanding of the offense[s] would have been obscured without it." *See Wyatt*, 23 S.W.3d at 25-26. This evidence was also

admissible under Rule 404(b) on the issue of Bonner's intent. *See Ficarro v. State*, No. 13-03-00439-CR, 2007 Tex. App. LEXIS 3166, at *22-24 (Tex. App.—Corpus Christi Apr. 26, 2007, pet. ref'd) (not designated for publication).

The evidence of child pornography is undoubtedly prejudicial. However, the State limited the visual evidence to two 30-second segments. We cannot say that the court abused its discretion by ruling that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *Id.* at *28-30. Thus, we overrule Bonner's second issue.

### Prosecutorial Misconduct

Bonner claims in his fourth issue that the prosecutor engaged in "serious and pervasive" misconduct.[2] However, Bonner did not object to any of the complained-of instances of alleged misconduct. Therefore, he has failed to preserve this contention for appellate review, and we overrule his fourth issue. *See* TEX. R. APP. P. 33.1(a)(1); *Shamam v. State*, 280 S.W.3d 271, 276 (Tex. App.—Amarillo 2007, no pet.).

---

[2]     The briefing in Bonner's case is unusual to say the least. This largely stems from the fact Bonner hired new counsel after his first appellate attorney filed the original appellant's brief. Bonner's new counsel filed a supplemental brief raising two additional issues denominated as his fourth and fifth issues. His new counsel also filed an "amendment [sic] brief" providing additional argument and authorities on the ineffective-assistance claim, which is the third issue in former counsel's brief.

## Ineffective Assistance of Counsel

Bonner argues in his third issue that he received ineffective assistance of counsel. Bonner identifies numerous areas in which he claims counsel was ineffective.[3] We will address them in chronological order.

To prevail on an ineffective-assistance claim, an appellant must show by a preponderance of the evidence that: (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Garza v. State*, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007). We begin with a "strong presumption" that counsel provided reasonably professional assistance, and Bonner bears the burden of overcoming this presumption. *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Generally, the appellate record is insufficient to satisfy this burden. *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004); *Curry v. State*, 222 S.W.3d 745, 754 (Tex. App.—Waco 2007, pet. ref'd).

> Strategic or tactical considerations are not considered deficient "unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" But "[w]hen no reasonable trial strategy could justify the trial counsel's conduct, the counsel's performance falls below an objective standard of reasonableness as a matter of law." And although this Court "has been hesitant to 'designate any error as per se ineffective assistance of counsel as a matter of law,' it is possible that a single egregious error of omission or commission by [applicant]'s counsel constitutes ineffective assistance."

---

[3] As previously noted, some of these instances of alleged ineffective assistance are identified in Bonner's original brief and some are identified in his "amendment brief." Finally, replying to the State's contention that he failed to preserve his fourth issue concerning prosecutorial misconduct, Bonner contends in his reply brief that the failure to preserve this complaint constitutes ineffective assistance. We have grouped these claims into 20 separate allegations.

*Ex parte Harrington*, 310 S.W.3d 452, 459 (Tex. Crim. App. 2010) (footnotes omitted) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Freeman v. State*, 125 S.W.3d 505, 512 (Tex. Crim. App. 2003) (Price, J., dissenting); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

### Motion in Limine

First, Bonner contends that trial counsel was ineffective because he failed to obtain a pretrial ruling on his motion in limine. Bonner notes that a pretrial ruling "had the potential to completely exclude the extraneous offense evidence" about which he complained in the second issue. To show ineffective assistance on such a claim, Bonner must show that the court abused its discretion by admitting the complained-of evidence. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).

We have already determined that the court did not abuse its discretion by admitting the evidence regarding child pornography. Like that evidence, the evidence regarding the marijuana and the glass smoking pipe was admissible extraneous-offense evidence. L.D. testified that Bonner made her smoke marijuana from a glass pipe. Therefore, this evidence was admissible as same-transaction contextual evidence. *See Wyatt*, 23 S.W.3d at 25-26; *Redwine*, 2005 Tex. App. LEXIS 1796, at *6-7.

Officer Adams made a single reference to "a quantity of methamphetamine" found in the master bedroom. Bonner promptly objected, and the trial court granted his requested limiting instruction at that juncture in the trial. Assuming without deciding that this evidence was inadmissible, we cannot say that the admission of this single reference to methamphetamine prejudiced the defense. *See Perry v. State*, No. 02-05-

00469-CR, 2007 Tex. App. LEXIS 4699, at *2-3 (Tex. App.—Fort Worth June 14, 2007, pet. ref'd) (per curiam) (not designated for publication).

*Opening Statement*

Second, Bonner argues that counsel was ineffective for failing to object to the prosecutor's characterization of him in the opening statement as "a child predator of the highest order."

"The prosecutor's opening statement should inform the jury of 'the nature of the accusation and the facts which are expected to be proved by the State in support thereof.'" *Manning v. State*, 864 S.W.2d 198, 204 (Tex. App.—Waco 1993, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(3) (Vernon 2007)). The challenged statement was objectionable to the extent that it sought to describe Bonner's character rather than focus on the facts "expected to be proved." *See Smith v. State*, No. 06-05-00148-CR, 2006 Tex. App. LEXIS 9782, at *8 (Tex. App.—Texarkana 2006, no pet.).

However, there are many strategic reasons why counsel may have chosen not to object to this statement, and, absent a record of the reasons for counsel's conduct, we must defer to counsel's decisions and deny such a claim of ineffective assistance. *See Garza*, 213 S.W.3d at 348; *Smith*, 2006 Tex. App. LEXIS 9782, at *8.

*State's Evidence*

Third, Bonner claims that counsel was ineffective for failing to object to the admission of E.S.'s videotaped statement. He argues that the recording is inadmissible under article 38.071, section 5(a)(1) of the Code of Criminal Procedure because a police

officer was present when the statement was made.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.071, § 5(a)(1) (Vernon Supp. 2009).

This statute permits the admission in evidence of the recorded statement of a child complainant if several statutory factors are satisfied.[4]  The first requirement is that "no attorney or peace officer was present when the statement was made."  *Id.*

Here, Detective Shannon Kimberling was located in an adjacent room watching the interview on a television monitor.  Near the conclusion of the interview, the interviewer Karen Tutt picked up an earpiece and told E.S., "I'm going to put this in my ear and see if I need to get any more details on anything that we've talked about."  Kimberling was talking to Tutt through the earpiece, but there is no testimony regarding what Kimberling told Tutt.  Tutt did not tell E.S. whom she was listening to on the earpiece.  Tutt concluded with some additional questions, asking if there was anything important that she had failed to ask about, confirming that everything E.S. told her was the truth, asking whether E.S. had told her everything that happened or only those things she felt comfortable telling, and whether E.S. had any questions of her.

Bonner contends that Detective Kimberling's presence in the adjacent room and +limited participation in the interview establish that she was "present" for the interview in violation of the statute.  We disagree.  Tutt's practice was to inform the family and the child beforehand that the interview would be videotaped for the

---

[4]     Article 38.071, § 5 governs the admission of a child complainant's recorded statement "made before a complaint has been filed or an indictment returned."  TEX. CODE CRIM. PROC. ANN. art. 38.071, § 5(a) (Vernon Supp. 2009).

investigation, but there is nothing on the recording to indicate that she told E.S. anyone was watching or listening. Tutt did not tell E.S. that Detective Kimberling was the person who was providing additional questions. However, E.S. was possibly aware that Detective Kimberling was in the building because, when E.S. asked Tutt what would happen next, Tutt told her that Detective Kimberling would talk to her mother and possibly E.S. and explain to them how she was going to proceed with the investigation.

Under these circumstances, we hold that Detective Kimberling was not "present" for E.S.'s interview as that term is used in the statute. It appears to be a common practice for officers to contemporaneously observe the child's interview as was done here. *See, e.g., Foster v. State*, No. 05-04-01232-CR, 2005 Tex. App. LEXIS 2505, at *5 (Tex. App.—Dallas Apr. 4, 2005, no pet.). Counsel was not ineffective for failing to make this objection.

Fourth, Bonner argues that counsel was ineffective for failing to object to the testimony of the nurse who examined L.D. regarding: (1) the nurse's "diagnosis" of sexual abuse based solely on L.D.'s statements about what happened; (2) a hypothetical question regarding whether there could be no physical evidence of an assault with "full penile penetration," especially twelve months afterward; and (3) a hypothetical question regarding whether every female child is born with "a completely covered hymen."

Regarding the nurse's "diagnosis," Bonner cites *Salinas v. State*, 166 S.W.3d 368 (Tex. App.—Fort Worth 2005, pet. ref'd), for the proposition that it is improper for a

medical expert to make "a direct comment on the credibility of the complaining witness." *Id.* at 371. Assuming without deciding that the testimony was improper, Bonner was not harmed by its admission. *Id.* at 371-72. Thus, we cannot say that the admission of the nurse's "diagnosis" prejudiced the defense. *See Perry*, 2007 Tex. App. LEXIS 4699, at *2-3.

Regarding the hypothetical questions posed to the nurse, we note that the purpose of expert testimony to "assist the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Hypothetical questions are frequently employed to accomplish this purpose. *See, e.g., Taylor v. State*, 106 S.W.3d 827, 832-33 (Tex. App.—Dallas 2003, no pet.). Here, the State used the hypothetical questions at issue to help the jury understand the absence of physical evidence and to know that this is not uncommon in cases of child sexual abuse. Counsel was not ineffective for failing to object to this line of questions.

Fifth, Bonner claims that counsel was ineffective for failing to object to K.A.'s testimony regarding extraneous offenses, namely that Bonner sexually assaulted her. K.A. testified that she witnessed Bonner sexually assault L.D. on several occasions and that he sexually assaulted both of them and/or had them engage in inappropriate touching with each other. Much of K.A.'s testimony was directly relevant to the allegations in the indictment regarding Bonner's sexual assaults on L.D. To the extent, K.A.'s testimony involved extraneous acts committed against her, the evidence was admissible as same transaction-contextual evidence. *See Wyatt*, 23 S.W.3d at 25-26; *Redwine*, 2005 Tex. App. LEXIS 1796, at *6-7. In addition, the evidence was admissible

to prove Bonner's intent. *See Morales v. State*, 222 S.W.3d 134, 147-48 (Tex. App.—Corpus Christi 2006, no pet.). Counsel was not ineffective for failing to object to this testimony.

*Defense Evidence*

Sixth, Bonner argues that he received ineffective assistance with regard to defense evidence because one of the witnesses called by counsel testified about a previously undisclosed outcry of sexual abuse made by Bonner's daughter M.B. Counsel called the witness, Amanda Bonner's mother, to testify about the various occasions on which the children were interviewed or had counseling sessions. The State suggests that counsel was attempting to establish that various family members and others exercised undue influence over the children and coerced, pressured or coached them until they eventually made outcry against Bonner. The record supports this interpretation.

When counsel asked the witness why Bonner's son N.B. was subjected to another forensic interview in August 2008 after having previously submitted to counseling and a forensic interview, she responded that it was because of the outcry M.B. had made to her one month before. Counsel was pursuing a strategically legitimate line of questioning when the witness made this unanticipated response, and, absent a record of the reasons for counsel's conduct, we must defer to counsel's decisions and deny such a claim of ineffective assistance. *See Garza*, 213 S.W.3d at 348; *see also Fox v. State*, 175 S.W.3d 475, 486 (Tex. App.—Texarkana 2005, pet. ref'd) (counsel not ineffective where

he explained the basis for his question, which was reasonable, but received a response that was not anticipated).

Seventh, Bonner contends that counsel was ineffective for failing to subpoena Bonner's children N.B. and M.B. to testify. To prevail on an ineffective-assistance claim premised on a failure to call a witness, the appellant must show that the witness was available and his testimony would have benefited the defense. *Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007). Here, there is no record of what N.B.'s and M.B.'s testimony would have been or how it would have benefited the defense. Thus, we have no record on which to conclude that counsel was ineffective for failing to subpoena these children.

Eighth, Bonner contends that counsel was ineffective for failing to consult or call experts on the psychology of child sexual abuse and computer forensics. According to Bonner, "[m]inimal investigation into purported 'child sexual abuse accommodation syndrome' would have revealed it lacked any scientific validity." To prevail on such a claim, however, the appellant must identify expert witnesses who were available and whose testimony would have benefited the defense. *See Cate v. State*, 124 S.W.3d 922, 927 (Tex. App.—Amarillo 2004, pet. ref'd); *see also Ramirez*, 280 S.W.3d at 853. Here, Bonner has not identified any such experts. Nor has he furnished any documentary evidence to support his assertion that "child sexual abuse accommodation syndrome" lacks scientific validity. Thus, the record does not support Bonner's assertion that counsel was ineffective for failing to consult or call expert witnesses.

Ninth, Bonner claims that counsel was ineffective for failing to object to the State's cross-examination of himself. Specifically, Bonner claims that counsel should have objected when the State asked: (1) "Is sexing a marijuana plant anything like sexing your daughter?" (2) "When did you start downloading child porn?" and (3) "[Y]our attorney brought out . . . that [M.B.] had also said that you had put your penis in her mouth. She would be lying too, correct?"

Regarding the first complained-of question, the prosecutor questioned Bonner at length about his marijuana growing operation. Bonner testified that, after the plants germinate, "you have to sex them because you have both male and female plants." He explained that the female plant is the preferred plant for cultivation because the male plant produces seeds. He testified that this process is referred to as "sexing them." The prosecutor then asked, "Is sexing a marijuana plant anything like sexing your daughter?" Bonner replied that he did not know how to answer that question.

Assuming without deciding that this question was improper, we cannot say that this isolated incident was sufficiently egregious to prejudice the defense. *See Perry*, 2007 Tex. App. LEXIS 4699, at *2-3. Moreover, counsel may have strategically chosen not to object to avoid drawing attention to the question. *See, e.g., Young v. State*, 10 S.W.3d 705, 712 (Tex. App.—Texarkana 1999, pet. ref'd).

Bonner next contends that counsel should have objected to the prosecutor's question about when he started downloading child porn. Here, the prosecutor was questioning Bonner about the pornography recovered from the house. Bonner had testified in detail on direct examination about viewing and downloading pornography

from the internet. On cross-examination, he testified that he believed "a very low number" of the seized disks contained pornography. When the prosecutor reminded him that Amanda had testified it was his handwriting on the disk which contained the 30-second segments published to the jury, Bonner agreed that the handwriting looked like his but would not concede that he had in fact written on that disk. At this point, the prosecutor asked the complained-of question: "So this disk is found in the office and it's got your handwriting on it, and low and behold, it looks a lot like child porn on there. Tell me this. When did you start downloading child porn?"[5]

"In Texas, the scope of cross-examination is wide open." *Felder v. State*, 848 S.W.2d 85, 99 (Tex. Crim. App. 1992); *Caron v. State*, 162 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 2005, no pet.). "Once an appellant decides to testify at trial he opens himself up to questioning by the prosecutor on any subject matter which is relevant." *Felder*, 848 S.W.2d at 99; *accord Caron*, 162 S.W.3d at 617. Counsel was not ineffective for failing to object to the complained-of question.

Bonner also argues that counsel was ineffective for failing to object when the prosecutor stated, ""[Y]our attorney brought out . . . that [M.B.] had also said that you had put your penis in her mouth. She would be lying too, correct?" Amanda's mother had testified that M.B. told her Bonner asked M.B. "to put his penis in her mouth." On direct examination, Bonner's counsel asked him about prior testimony that he "behaved inappropriately" toward M.B. Specifically, counsel asked whether he had "ever caused

---

[5]    Bonner disputed the prosecutor's characterization of the material as child pornography. Rather, Bonner characterized the material as "questionable."

her to perform a sex act on [him]." Given the wide latitude permitted on cross-examination, we cannot say that the prosecutor's question was improper in light of Bonner's testimony on direct examination as well as the testimony of Amanda's mother regarding the substance of M.B.'s outcry. *Id.* Thus, counsel was not ineffective for failing to object to the complained-of question.

*Jury Charge*

Tenth, Bonner claims that counsel was ineffective for failing to object to the guilt-innocence charge because: (1) the application paragraph for Count 6 improperly commented on the evidence; (2) the charge subjected him to double jeopardy with regard to Counts 3 and 4 and Counts 8 and 9; and (3) counsel failed to request instructions on lesser-included offenses.

The application paragraph for Count 6 reads in pertinent part as follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 7th day of May, 2006, in Johnson County, Texas, the defendant, ROBERT WALTER BONNER did then and there intentionally or knowingly cause the mouth of [L.D.], a child younger than 14 years of age who was not the spouse of said defendant to contact the sexual organ of the defendant, being the incident which was the first time that [K.A.] witnessed Robert Bonner cause [L.D.] to put his penis in her mouth, then you will find the defendant, ROBERT WALTER BONNER, guilty of the offense of Aggravated Sexual Assault of a Child as charged in Count Six of the indictment.

"A charge improperly comments on the evidence if it 'assumes the truth of a controverted issue.'" *Hanson v. State*, 180 S.W.3d 726, 728 (Tex. App.—Waco 2005, no pet.) (quoting *Whaley v. State,* 717 S.W.2d 26, 32 (Tex. Crim. App. 1986)). The challenged language was added to reflect the State's election of the evidence it would rely on for

conviction.[6] Because the instruction assumes that K.A. saw Bonner sexually assault L.D. (implicitly more than once), it improperly commented on the evidence. *See Whaley*, 717 S.W.2d at 31-33; *Harkins v. State*, 268 S.W.3d 740, 745-48 (Tex. App.—Fort Worth 2008, pet. ref'd).

However, the court had previously instructed the jury about the State's election in a manner which did not comment on the evidence: "To prove the offense alleged in count six in the indictment, the State has elected to proceed on the incident which was the first time that [K.A.] *allegedly* witnessed Robert Bonner cause [L.D.] to *allegedly* put his penis in her mouth." (emphases added). Viewing the charge as a whole, we cannot say that the erroneous instruction in the application paragraph harmed Bonner. *See Whaley*, 717 S.W.2d at 33; *Harkins*, 268 S.W.3d at 748. Thus, counsel was not ineffective for failing to object.

Bonner next argues that counsel was ineffective for failing to object to the charge on the grounds that it subjected him to double jeopardy with regard to Counts 3 and 4 and Counts 8 and 9. Counts 3 and 4, respectively, allege that Bonner committed the aggravated sexual assault of L.D. by causing her sexual organ to contact his and committed the offense of indecency with a child by touching her sexual organ. According to the respective application paragraphs (based on the State's election), these offenses arose from an "incident in May 2007 which was the last time [L.D.] testified that Robert Bonner committed th[ese] offense[s]." Counts 8 and 9 make similar

---

[6] In other paragraphs, however, the language used was qualified by referring to occurrences a particular witness had "testified" about.

allegations with regard to an incident which L.D. testified happened during the third grade.

L.D. testified that Bonner touched her genitals with his hands on "many occasions." She similarly testified that he touched her genitals with his mouth and with his own genitals many times. Because the evidence establishes the commission of distinct offenses based on different conduct, Bonner's indecency convictions under Counts 4 and 9 are not jeopardy-barred by his aggravated sexual assault convictions under Counts 3 and 8. *See Hanson*, 180 S.W.3d at 732-33. Thus, counsel was not ineffective for failing to object on this basis.

Bonner also complains that counsel was ineffective for failing to request instructions on the lesser-included offense of indecency with a child for each charge of aggravated sexual assault. The indictment alleged that Bonner committed aggravated sexual assault by: (1) causing L.D.'s mouth to contact his genitals; (2) causing her genitals to contact his mouth; and (3) causing her genitals to contact his own genitals. The indictment alleged that he committed each of these offenses twice.[7]

A defendant must satisify a two-part test to obtain a charge on a lesser-included offense. "First, the lesser-included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Smith v. State*, 297 S.W.3d 260, 275 (Tex. Crim. App. 2009). Based on the facts in this case, we conclude that there is not evidence in the record that

---

[7]     These allegations are contained in Counts 1 through 3 and 6 through 8, inclusive.

would permit a rational jury to find that Bonner was not guilty of aggravated sexual assault and guilty only of indecency. *See Guth v. State*, No. 12-09-00186-CR, 2010 Tex. App. LEXIS 4983, at *6-7 (Tex. App.—Tyler June 30, 2010, no pet.) (not designated for publication); *Cunningham v. State*, No. 05-08-00691-CR, 2010 Tex. App. LEXIS 77, at *11-12 (Tex. App.—Dallas Jan. 7, 2010, no pet.) (not designated for publication). Thus, counsel was not ineffective for failing to object on this basis.

*Argument*

Bonner's final claims of ineffective assistance involve counsel's failure to object to several alleged instances of improper argument by the prosecutor.

There are four categories of permissible jury argument: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). "[T]he State is allowed wide latitude in drawing inferences from the evidence that are 'reasonable, fair, legitimate and offered in good faith.'" *Lair v. State*, 265 S.W.3d 580, 592 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (quoting *Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996)).

Eleventh, Bonner argues that counsel should have objected when the prosecutor referred to him as "a predatory monster," "a sexual predator," a "monster," "an evil," and a "child predator of the highest order." However, courts have found similar characterizations to not be objectionable so long as they represent reasonable deductions from the evidence. *See Burns v. State*, 556 S.W.2d 270, 285 (Tex. Crim. App.

1977); *Verde v. State*, No. 05-08-00252-CR, 2009 Tex. App. LEXIS 6088, at *7-9 (Tex. App.—Dallas Aug. 6, 2009, no pet.) (not designated for publication).

Twelfth, Bonner contends that counsel should have objected when the prosecutor described his defensive theories as "gibberish" and "ridiculous." However, similar comments have been held to be an appropriate response to the argument of opposing counsel. *See Pope v. State*, 161 S.W.3d 114, 126-27 (Tex. App.—Fort Worth 2004), *aff'd*, 207 S.W.3d 352 (Tex. Crim. App. 2006).

Thirteenth, Bonner claims that counsel should have objected to the prosecutor's argument which denigrated Bonner's testimony "while giving no evidentiary reasons, and then bolstered [the] credibility of State's witnesses with unsworn testimony." Bonner also complains of the prosecutor's argument referring to him as "a liar of the highest order" and stating, "You know he lied. You know he lied."

It is improper for a prosecutor to "inject his personal opinion of a witness's credibility into his jury argument." *Ex parte Aguilar*, No. AP-75,526, 2007 Tex. Crim. App. Unpub. LEXIS 408, at *43 (Tex. Crim. App. Oct. 31, 2007) (not designated for publication) (citing *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981)). The complained-of argument in *Aguilar* involved an attorney who argued to the jury that he did not cross-examine a particular witness "because I think she is a liar." He also argued, "I decided it was so obvious that she was a liar . . . ." *Id.* at *43 n.22. These were clear expressions of personal opinion.

Conversely, it is not inappropriate for a prosecutor to refer to the defendant as a "liar" if this is a reasonable deduction from the evidence. *See Mock v. State*, 848 S.W.2d

215, 221 (Tex. App.—El Paso 1992, pet. ref'd). Here, the prosecutor merely compared the testimony of L.D., E.S. and K.A. with that of Bonner and correctly told the jury that both could not be true. This argument was a reasonable deduction from the evidence and was not improper. *Id.*

Fourteenth, Bonner argues that counsel should have objected to arguments he contends impermissibly appealed to the jurors' emotions during the punishment phase. The prosecutor argued, "I urge you to do what your heart tells you to do." He contrasted those "who give to life" and "bless you" with those "who just take, take, take and use and manipulate." He urged the jurors to be the former.

> But let [your verdict] also be a message that says, you know, for [L.D.] and for [E.S.] and for [K.A.], we're for them. We're for them. And through your verdict and [sic] it will be a message that says you love them and support them and that in your own way you cherish them and you want to bless them in their lives and set them free from this sexual predator.

Similar comments have been held to be appropriate as reasonable deductions from the evidence and proper pleas for law enforcement. *See Rhodes v. State*, 450 S.W.2d 329, 331-32 (Tex. Crim. App. 1970) (urging jurors to send message to police that "we are proud of you and we appreciate what you are doing for us"); *Bui v. State*, 964 S.W.2d 335, 345-46 (Tex. App.—Texarkana 1998, pet. ref'd) ("send a message to [the complainant] and let her know there is justice"); *see also Bible v. State*, 162 S.W.3d 234, 248-49 (Tex. Crim. App. 2005) ("you know in your heart that some people deserve the death penalty").

Fifteenth, Bonner contends that counsel should have objected during the prosecutor's punishment argument which urged jurors to consider the impact the

sexual assaults would have on the complainants with regard to future relationships, their ability to trust, and their ability to have a "normal sexual relationship." The complainants' counselors testified about the impact the assaults would have on their future relationships. The complained-of argument was a reasonable deduction from the evidence. This evidence related to the nature and circumstances of the offense and the crime's effects on the complainants, which are all "legitimate considerations in assessing punishment where the crime is a violent assault on the person." *Hunter v. State*, 799 S.W.2d 356, 360 (Tex. App.—Houston [14th Dist.] 1990, no pet.) (quoting *Killebrew v. State,* 746 S.W.2d 245, 248 (Tex. App.—Texarkana 1987, pet. ref'd)).

Sixteenth, Bonner claims that counsel should have objected to the prosecutor's arguments: "I would've done this one for free" and "I would pay the County [to prosecute this case]." Bonner contends that this argument violates the principle enunciated in *Clayton v. State*, 502 S.W.2d 755 (Tex. Crim. App. 1973), and similar cases that it is improper for a prosecutor to state his personal opinion regarding the guilt of the accused. *Id.* at 758. However, Bonner's case is distinguishable. In *Clayton*, the prosecutor argued that the elected district attorney "couldn't pay me enough to come down here and prosecute *a man I didn't know in my heart to be guilty*." *Id.* at 756 (emphasis added). Here, the prosecutor did not argue his personal opinion regarding Bonner's guilt. *See Jones v. State*, 568 S.W.2d 847, 860 (Tex. Crim. App. 1978).

Seventeenth, Bonner contends that counsel should have objected when the prosecutor argued, "[I]f I said a hundred things to you, there's a thousand things I forgot." He contends that this argument impermissibly suggested that the prosecutor

was aware of additional facts about his guilt not known to the jury. *Id.* ("it is never proper for a prosecutor to imply to the jury that he knows about evidence of a defendant's guilt which has not been presented to a jury"). However, Bonner reads the argument out of context. The prosecutor argued:

> So you go back and you take all of the evidence that you have before you, consider everything, because if I said a hundred things to you, there's a thousand things I forgot. It's true. But you will remember the evidence.

When read in context, the complained-of argument did not suggest to the jurors that the prosecutor was aware of additional facts about Bonner's guilt. *Id.* Rather, the prosecutor urged the jurors to consider all the evidence in determining their verdict.

Eighteenth, Bonner argues that counsel should have objected to instances when the prosecutor misstated or mischaracterized the testimony of various witnesses during closing argument.

- With regard to a school counselor who testified she did not recall L.D., E.S. and K.A. telling her that they had been being sexually abused, even though they all stated that they had, the prosecutor argued, "She also said she couldn't rule it out."

- The prosecutor argued that four girls had been abused (including Bonner's daughter M.B.), specifically arguing, "It happened to [M.B.]."

- The prosecutor argued that Bonner "can't even acknowledge that he is a drug dealer."

- The prosecutor argued that L.D. said Bonner ejaculated in her mouth.

- The prosecutor argued that N.B. saw L.D. "naked sitting on her daddy, her stepdaddy" and L.D. was "wrong" when she testified that she thought N.B. saw her with a towel.

L.D., E.S. and K.A. all stated that they had reported the sexual abuse to their school counselor. The counselor testified that she did not recall them making such allegations because she would have reported it to CPS if they had. On cross-examination, the prosecutor twice asked the counselor if she could rule it out. Both times she answered that she did not recall meeting with the girls about the allegations. She never testified that she could or could not rule it out.

The prosecutor referred to M.B. as one of Bonner's victims. We have already described M.B.'s outcry of abuse.

The prosecutor argued that Bonner "can't even acknowledge that he is a drug dealer" and "has a hard time with that." During the State's cross-examination of Bonner, when the prosecutor asked him if he was a "drug dealer," he replied that he was a "marijuana cultivator." He agreed that he was essentially a "dealer of marijuana," but when the prosecutor took it one step further and again asked if he was a "drug dealer," he persisted in describing himself as a "marijuana dealer." He eventually conceded that he was a "drug dealer."

At trial, L.D. testified that Bonner put his penis in her mouth but she did not remember if "any of the white stuff ever came out" while his penis was in her mouth. In the May 2008 forensic interview, however, she stated that it did come out in her mouth.

In the May 2008 interview, L.D. attributed N.B's outcry to an occasion when he saw her in a towel after a shower. However, Amanda's mother testified that, when N.B. described the "sexing" incident to her, "He pointed to himself and said, 'Daddy puts

this in [L.D.'s] bottom.'" N.B.'s counselor testified that he described this incident by saying that L.D. and Bonner did not have any clothes on and "were making sex noises."

We have already observed that "the State is allowed wide latitude in drawing inferences from the evidence that are 'reasonable, fair, legitimate and offered in good faith.'" *Lair*, 265 S.W.3d at 592 (quoting *Shannon*, 942 S.W.2d at 597). Each of the alleged misstatements and mischaracterizations were reasonable inferences from the evidence.

Nineteenth, Bonner claims that counsel should have objected when the prosecutor attributed to the defense a claim that Bonner's prosecution amounted to a "huge conspiracy."

In his opening statement, defense counsel suggested that, after Bonner and Amanda were each charged with drug offenses, their respective families "divided into camps" and Amanda's "camp" was "attempting to deflect any blame away from her." Counsel suggested that the children's inculpatory statements were influenced by this. However defense counsel did not use the term "conspiracy."

During the complained-of argument, the prosecutor argued that the defense had not presented any evidence to support defense counsel's claim in opening statement of "this huge conspiracy" against Bonner. The prosecutor continued:

> You were told in their opening statement about this conspiracy and all this stuff they're going to show you, how the two families were fighting and that's—you know, they're going to show you proof. They didn't get any of that. You have to back up what you say. Otherwise, it's not credible.

Permissible jury argument includes answers to the arguments of opposing counsel. *Gallo*, 239 S.W.3d at 767. This category of permissible argument includes answers to the opening statement of opposing counsel. *See Esquivel v. State*, 180 S.W.3d 689, 692 (Tex. App.—Eastland 2005, no pet.). Thus, the complained-of argument was not improper.

Twentieth, Bonner argues that counsel should have objected when the prosecutor urged the jurors not to acquit Bonner, thereby "letting it happen to someone else." The prosecutor continued, "You are the only people left who can put a stop to it. And it is completely up to you." However, such arguments have been held to be permissible pleas for law enforcement. *See Longoria v. State*, 154 S.W.3d 747, 765 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Bonner has failed to satisfy his burden to overcome the "strong presumption" that his trial counsel provided reasonably professional assistance. *See Andrews*, 159 S.W.3d at 101. Accordingly, we overrule his third issue.

**Abuses of Discretion**

Bonner contends in his fifth issue that the trial court abused its discretion by: (1) failing to conduct an in-camera review of the CPS file before granting a motion to quash his subpoena of those records; (2) refusing to permit him to test Tutt's credibility with regard to her interview of E.S.; (3) refusing to permit him to challenge the validity of a counselor's theories and qualifications; (4) admitting extraneous-offense evidence of child pornography; and (5) permitting the prosecutor to mischaracterize K.A.'s testimony regarding whether Bonner made her watch child pornography.

First, Bonner argues that the court erred by granting CPS's motion to quash his subpoena of the CPS file. The court heard this motion on the last day of the guilt-innocence phase. A CPS regional attorney testified that CPS had been served with this subpoena the day before and explained that, because of the confidential materials contained in the file, a redacted version would have to be prepared for Bonner. The court commented that it would not conduct an in-camera review of the voluminous records at that late stage of the trial. The court observed that the CPS case "was concluded some months ago," counsel was appointed to represent Bonner more than a year before trial, and counsel had "known about the CPS case since the beginning."

Bonner's counsel conceded that he represented Bonner "for at least part of the CPS investigation." He explained that he was seeking documentary evidence regarding: (1) N.B.'s outcry and the report of that to CPS by N.B.'s therapist Laura Greuner; and (2) whether the CPS caseworker had indicated that she did not want M.B. to live with Bonner's mother, which counsel argued was contrary to the testimony in a February 2008 CPS hearing. The court responded that counsel should have subpoenaed the CPS records earlier and that it did not see the relevance of additional records regarding N.B.'s outcry.

Defense counsel must exercise reasonable diligence in preparing the case. In *Gonzales v. State*, 304 S.W.3d 838 (Tex. Crim. App. 2010), the Court of Criminal Appeals considered a trial court's denial of a continuance on the first day of trial to secure

additional time for an expert to review the victim's medical records.[8] *See id.* at 842. The

Court held:

> Here, the appellant made no attempt in his pretrial motion for
> continuance to explain why he could not have requested expert medical
> assistance sooner than the first day of trial. We are unable to say that the
> trial court would have abused its discretion to require the motion for
> continuance to contain an allegation of diligence in seeking expert
> assistance in a sufficiently timely manner as to avoid the necessity to delay
> a trial setting. The trial judge could reasonably have rejected the
> appellant's motion for continuance because it failed to state either the
> diligence the appellant exercised in trying to obtain expert assistance
> sooner or, alternatively, how circumstances conspired to prevent him
> from realizing any earlier that he required such assistance.

*Id.* at 844.

In Bonner's case, the trial court apparently believed that counsel did not exercise

diligence in seeking the CPS file to determine whether it contained any relevant

evidence. We cannot say that the court abused its discretion by granting the motion to

quash a subpoena which was not served until the next-to-last day of the guilt-innocence

phase. *See id.*

Second, Bonner claims that the court abused its discretion by not permitting him

"to properly test the credibility" of Karen Tutt. The court sustained the State's objection

to Bonner's question regarding "some sort of signs" or body language children might

display when they are not telling the truth.

---

[8]    The issue before the Court was whether the trial court had impermissibly denied the defendant
an evidentiary hearing on his motion for new trial to establish how he was harmed by the denial of the
continuance. *See Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010). However, the Court
observed that the defendant "must preliminarily demonstrate that the trial court erred to deny the
pretrial continuance in the first place." *Id.* at 843. Thus, the Court determined the issue by concluding
that the trial court had not erred in the first instance by denying the continuance. *Id.* at 844.

Under Rule of Evidence 103(a)(2), a party must make an offer of proof to preserve error with regard to the exclusion of evidence unless the substance of the evidence was apparent from the context. TEX. R. EVID. 103(a)(2). However, an offer of proof is not required when a defendant is cross-examining a State's witness "about matters that might affect the witness's credibility." *Holmes v. State*, No. PD-453-07, 2009 Tex. Crim. App. LEXIS 522, at *11 (Tex. Crim. App. Apr. 29, 2009), *modified on reh'g*, 2010 Tex. Crim. App. LEXIS 17 (Tex. Crim. App. Feb. 24, 2010). But an offer of proof is required when the defendant seeks to challenge the credibility of a witness's testimony on cross-examination. *Id.* 2009 Tex. Crim. App. LEXIS 522, at *11-13. As the Court explained, the expression "a witness's credibility" refers to "personal characteristics of the witness," while the expression "the credibility of a witness's testimony" "refers to the substance of the evidence." *Id.* at *11-12.

Tutt testified that the purpose of her interviews are "to try to elicit the truth" but it is not her role to determine whether the children she interviews are credible. Here, Bonner claims that he was seeking to test Tutt's credibility. However, a review of his cross-examination demonstrates that he was attempting to challenge the credibility of L.D. and E.S. and their testimony. The cross-examination did not focus on Tutt's "personal characteristics." Thus, an offer of proof was required to preserve this issue for appellate review. *See id.* at *11-13.

Because Bonner failed to make an offer of proof, he failed to preserve this issue for review.

Third, Bonner contends that the court abused its discretion by refusing to permit him to challenge the validity of Laura Gruener's theories and qualifications. When Bonner's counsel asked to take Gruener on voir dire regarding her theories and qualifications, the court denied that request and advised counsel that he could cross-examine her on these issues.

A separate "gatekeeper" hearing is not required to evaluate the reliability of an expert witness, and a trial court has broad discretion in making that determination. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152-53, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999); *Piro v. Sarofim*, 80 S.W.3d 717, 720 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The trial court afforded Bonner the opportunity to test the validity of Gruener's theories and qualifications on cross-examination. He did not take advantage of that opportunity, nor does he challenge her theories or qualifications on appeal.[9]

Fourth, Bonner argues that the court abused its discretion by admitting extraneous-offense evidence of child pornography. However, we have already addressed this contention in ruling on Bonner's second issue.

Fifth, Bonner claims that the court abused its discretion by permitting the prosecutor to mischaracterize K.A.'s testimony regarding whether Bonner made her watch child pornography.

The prosecutor was questioning Bonner about how all three girls could have known that there was child pornography in Bonner's house even though they had not

---

[9] Bonner does challenge counsel's failure to object to Gruener's testimony regarding child abuse accommodation syndrome, but he has not furnished any documentary evidence to support his assertion that child sexual abuse accommodation syndrome lacks scientific validity.

talked with each other for a significant period of time. Bonner initially replied, "It was in the paper."

> (Q): Okay. So [K.A.] in Indiana read the paper here and knew specifically that there was female on female child porn?
>
> (A): I don't think I remember [K.A.] testifying at all about any pornographic material.
>
> (Q): Yeah, I think she said that you would actually put it on there and make her watch it while she was doing stuff to you, and you were making her and [L.D.] do stuff together—

[Defense counsel's objection to mischaracterization of testimony overruled]

When K.A. testified,[10] she was not asked whether she was made to watch pornography. L.D. testified that she did not think that K.A. was made to although she thought that E.S. was. Thus, the court abused its discretion by overruling this objection.

Under Rule of Appellate Procedure 44.2(b), we must disregard this non-constitutional error unless it affected Bonner's substantial rights. TEX. R. APP. P. 44.2(b). We agree with the State that this error was harmless. The State did not repeat this assertion in closing argument. This single mischaracterization of the testimony did not have a substantial or injurious effect or influence in determining the jury's verdict at the guilt phase, especially in light of the overwhelming evidence of Bonner's guilt. *See Whitaker v. State*, 286 S.W.3d 355, 363-64 (Tex. Crim. App. 2009). Accordingly, we overrule Bonner's fifth issue.

We affirm the judgment.

---

[10] Detective Kimberling testified that Indiana authorities conducted a forensic interview with K.A. after her outcry. However, neither a recording nor a transcription of this interview was offered in evidence.

                                        FELIPE REYNA
                                        Justice

Before Chief Justice Gray,
        Justice Reyna, and
        Justice Davis
Affirmed
Opinion delivered and filed September 8, 2010
Do not publish
[CR25]